# RUSSELL DEACH v. ST. PAUL CITY RAILWAY COMPANY AND ANOTHER.[1]

May 7, 1943.

No. 33,250.

[1]Reported in 9 N. W. (2d) 735.

*C. J. Menz* and *A. J. Donnelly,* for appellants.
*William H. DeParcq,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Originally this was an action by Russell Deach, as father and natural guardian of Eugene Deach, a minor five years and ten months old, to recover for personal injuries sustained by the latter as the result of the alleged negligence of defendants. Thereafter, while the action was pending, Eugene died of said injuries. Pursuant to stipulation, an amended complaint was served, and the case tried under the death by wrongful act statute. The jury returned a verdict of $5,500 for plaintiff against both defendants, who appeal from an order denying their alternative motion for a judgment or a new trial.

The facts are as follows: The accident occurred on December 2, 1940, at about 5:40 p. m. while Eugene was crossing Selby avenue in St. Paul, from the north to the south side thereof, near Griggs street. At that time he was struck by an eastbound streetcar of defendant street railway company, operated by its agent, the defendant William Johnson.

Eugene lived with his parents on the west side of Griggs street, just north of the northwest corner of the intersection formed by Selby avenue and Griggs street. His father, the plaintiff here, operated a filling station on the southwest corner of said intersection, while just east of the southeast corner thereof was located a grocery store.

The parents of the child had trained and instructed him not to cross Selby avenue at any time unless accompanied by his father

or some older person. Thus, when he crossed Selby on his way to kindergarten class, he was instructed to cross only with the school police; and if he was required to cross at other times, he was trained to call over to his father at the filling station, who would come or send an older boy to take him across.

On December 2, 1940, shortly prior to the time of the accident, Eugene's mother sent him to the grocery store next to the corner on Selby to purchase some alphabet macaroni shells with which the children of the neighborhood were making name badges. He was given the wrong kind at the grocery, and his mother sent him on a second trip, with a note, to obtain the right kind. She was aware that it was Eugene's plan to visit a friend who lived on the north side of Selby avenue about half a block east of the intersection to get samples of the macaroni before going back to the store.

The specific instructions given Eugene by his mother, of course, were not admissible, but the record indicates that she contemplated or expected him to return and cross Selby at the intersection near his father's filling station according to his customary practice. Contrary to her expectations, however, Eugene crossed the street in front of his friend's home, and it was while he was so crossing that the accident occurred. He died the following May 9 as a result of the injuries then sustained.

At the time of the accident darkness had settled, and the weather was below zero. Snow covered the ground, and the street lights at the intersections were lighted. The child was attired in a newly purchased, dark snow suit with helmet and goggles. The goggles fitted over glasses which he wore. There is no evidence that the helmet or goggles impaired his vision.

Selby avenue at the place and time of the accident was clear of parked cars, with little or no traffic moving at the time. It is level there for several blocks. The streetcar involved in the accident was behind schedule, and the motorman was endeavoring to make up time. Two witnesses for plaintiff testified that the speed of the streetcar was approximately 30 miles per hour. The motor-

man's view was unobstructed, and his headlights threw a light from 200 to 300 feet ahead and to a width of approximately 25 feet on either side of the rails at a distance of 50 feet ahead of the car.

The motorman's testimony as to the accident is indefinite and apparently contradictory. A fair summary of it indicates that he did not see the child until a moment or so before the actual contact. He gave no warning signal and did not apply the brakes until after the contact. There is some evidence that the child was running at the time of contact, but it is not clear whether this was to avoid being hit or otherwise.

The trial court submitted to the jury the questions of the negligence of the motorman and the contributory negligence of the child, but charged that there was no evidence of contributory negligence on the part of Eugene's parents.

Upon this appeal defendants' main contentions are that the court erred (1) in submitting to the jury the question of the speed and control of the streetcar in determining whether defendants were guilty of negligence; (2) in denying defendants' motion for a directed verdict on the grounds that the evidence established decedent's contributory negligence as a matter of law; (3) in not giving defendants' requested instruction with reference to Minn. St. 1941, § 169.21, subd. 3 (Mason St. 1940 Supp. § 2720-204), relating to right of way as between a pedestrian and a vehicle; (4) in holding as a matter of law that there was no negligence in the conduct of decedent's mother in sending him on the errand in the manner and at the time described; and (5) in denying defendants' motion for a new trial on the ground that the verdict is excessive and appears to have been given under the influence of passion and prejudice.

1. Defendants in their brief concede that there may have been evidence of negligence on their part, but contend that the question of the speed and control of the car should not have been submitted to or considered by the jury in determining the question of their negligence. They base their argument on this point on the

testimony of their witnesses that the speed of the streetcar did not exceed 18 miles per hour at the time of the accident, and that the car stopped within 15 feet after the brakes were applied. The testimony of plaintiff's witnesses, however, was that the speed of the car was approximately 30 miles per hour shortly before the accident, and defendant Johnson testified at one time that the car stopped from 30 to 35 feet after the accident. Such conflicting testimony would appear to make this a simple fact question for the jury. Certainly it would not justify the trial court in instructing the jury as a matter of law that the speed and control of the car were to be disregarded in determining the question of defendants' negligence. On this point the court instructed the jury as follows:

"Under our law a streetcar is not bound by the exact rules that the driver of an automobile is bound; that is, with respect to thirty miles an hour, etc., etc., because they run on fixed rails, but they are required to drive at a reasonable rate of speed. The statute reads [Minn. St. 1941, § 169.14, subd. 1 (Mason St. 1940 Supp. § 2720-178)]:

" 'No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so restricted as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.' "

The court followed this instruction with an explanation of the effect of the violation of such statute insofar as negligence is concerned and gave the proper and customary definitions of negligence and proximate cause. Under the circumstances, we hold that the instructions given were correct, and the question of defendants' negligence properly submitted to the jury.

■ Defendants contend further that the evidence conclusively indicates that Eugene was running across Selby avenue from

north to south in the middle of the block and immediately ahead of the oncoming streetcar, and .that in doing so he violated § 169.21, subd. 3 (§ 2720-204), relating to the right of way as between a pedestrian and a vehicle. It is defendants' further claim in this connection that failure to submit any evidence to invalidate the *prima facie* negligence established by the violation of this statute made the question of decedent's contributory negligence one of law and accordingly that a verdict should have been directed.

We disagree with defendants' contentions in this respect for several reasons. A careful examination of the record does not indicate that it is conclusively established that Eugene was running across Selby avenue immediately ahead of the oncoming streetcar. It could be concluded by the jury, from a full examination of the evidence and a careful consideration of the testimony, which was far from clear and definite, that Eugene was struck by the right-hand side of defendants' streetcar while running to avoid it. No doubt that was the conclusion drawn from the evidence by the jury.

It is well established in this state that the standard of care required of an infant is not that required of an adult, but rather the degree of care common to children of like age, intelligence, and experience. This rule leaves it for the jury to determine whether the evidence before it establishes negligence on the part of a child in view of the child's age, intelligence, and experience. Eckhardt v. Hanson, 196 Minn. 270, 264 N. W. 776, 107 A. L. R. 1, 20 Minn. L. Rev. 685.

On this the court instructed the jury as follows:

"What is 'contributory negligence'? It probably already appears what it is. It is the negligence on the part of the boy himself. He is charged with not having exercised the degree of care which a reasonably prudent boy of his age would have exercised under the same or similar circumstances. If he did not exercise that degree of care of a boy of his age, experience and intelligence and training, he would be negligent and if his negligence contributes to the direct cause of the accident then his parents cannot

recover in this case regardless of what you find the conduct of the motorman to be or the contribution he made to the proximate cause of the accident."

And further:

"The boy was required to exercise that degree of care that boys approaching six years of age would exercise under the same or similar circumstances. Children are not held to the degree of care that older people are held but they are merely held to the duty of exercising that degree of care which children of their age, experience, training would normally exercise, and the motorman was only required to exercise that degree of care which a reasonably prudent motorman would exercise under the same or similar circumstances."

The foregoing appear to be correct and proper summaries of the law of contributory negligence as applicable to children and as defined in Eckhardt v. Hanson, *supra*.

■ Defendants contend further, however, that the court should at least have given the instruction requested by them with reference to violation of the aforesaid statute. Their requested instruction was as follows:

"A statute of this State, Section 2720-204, Mason's Minnesota Statutes, 1927, provides as follows:

" '(a) Every pedestrian crossing a roadway at any point other than within a marked crosswalk, or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway.'

"It was the duty of the plaintiff's deceased, Eugene Deach, at the time and place of the happening of the accident to obey this statute and yield the right of way to the streetcar, and if you find from the evidence in this case that plaintiff's deceased failed to obey this statute, such failure upon his part would constitute prima facie evidence of negligence."

In response to this request, the court instructed the jury as follows:

"As to pedestrians the statute recites:

" 'Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway.'

"And recites further:

" 'Notwithstanding the provisions of this section every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a roadway.'

"Where the word 'horn' was used does not mean the motorman would be excluded from the provision. He is intended to be included within the provision of the statute.

"A violation of a statute such as I have read, in all civil actions the violation of any of the provisions of this act by either or any of the parties to such action or actions shall not be negligence per se but shall be prima facie evidence of negligence. That merely means the violation of the statute raises a presumption of negligence rather than saying that it is negligence as a matter of law, as it was under the old statute. It still remains for the party who charges another with the violation of a statute to show that such violation (if it existed) was the proximate, or contributed to the proximate cause of the accident. It is conceivable that in some instances the violation of a statute claimed to be negligence, does not contribute to the direct cause of the accident. That is the question which the jury must determine; whether or not, if there is a violation of any of these statutes, by either party, such violation contributed to the direct cause of the accident, and the resulting injury."

The court gave the full statutory rule and not merely that portion requested by defendants. The portion added by the court indicates that a different rule is applicable when a child rather than

an adult is involved, as was the case here, and it would have been error for the court to give merely the portion of the statute requested by defendants. The latter portion of the statute indicates that a degree of vigilance commensurate with the risk or hazard involved is imposed upon the driver of a vehicle when a child is involved, and we hold that the instruction given by the court as above quoted was a fair and correct statement of the rule.

Even as to adults, it appears established that the failure of an adult pedestrian to yield the right of way as prescribed by statute does not establish contributory negligence as a matter of law. The case of Wojtowicz v. Belden, 211 Minn. 461, 1 N. W. (2d) 409, cited by defendants, involves an adult pedestrian who was acting in direct violation of § 169.21, subd. 5 (§ 2720-207) in walking on the right side of the roadway. Here the statute in question does not forbid pedestrians to cross between intersections, but merely obligates those so crossing to yield the right of way to vehicles on the roadway. The question of decedent's contributory negligence was for the jury's determination, and the court correctly submitted it to the jury under proper instructions as above set forth. Peterson v. Miller, 182 Minn. 532, 235 N. W. 15; Heikkinen v. Cashen, 183 Minn. 146, 235 N. W. 879.

■ Defendants further claim that the acts of Eugene's mother in sending him on an errand at the time and in the manner involved indicated negligence on her part, and that this question should have been submitted to the jury. A finding of contributory negligence on her part should, it is contended by defendants, reduce the verdict at least in the amount of her interest therein. In this respect defendants contend that it was negligent for the mother to send the child across Selby avenue on the errand at the time in question and to dress him in the dark snow suit and helmet equipped with goggles.

In support of defendants' contentions numerous cases are cited indicating that parents may be guilty of contributory negligence in permitting children to cross or play on busy thoroughfares or in other dangerous places. The rule with reference thereto has

been defined by this court on many occasions. In the case of Converse v. Ableman, 153 Minn. 306, 309, 190 N. W. 340, 341, while holding there the question was for the jury, the court did submit a clear statement of the rule. It was there said:

"There is a clear distinction between cases where parents allow young children to use as a playground a street which is a thoroughfare for automobiles and cases like the one at bar, where children of the age and intelligence of these two boys are allowed to cross a street in front of their parents' home at an hour of the day when travel was not particularly heavy and one crossing the street will be in the plain sight of automobile drivers. * * * The question to be determined is whether the parent took as much care of his child as reasonably prudent persons of the same class would ordinarily take."

A careful examination of cases cited by defendants indicates that in all of them it might reasonably have been found that the parents had failed to exercise the care of a reasonably prudent person, but, on the contrary, had been derelict and indifferent insofar as their duties were concerned. An examination of the record here indicates the opposite to be true. The child had reached the age where it was necessary each day for him to cross Selby avenue on his way to kindergarten class. His parents had carefully trained and instructed him in this respect, and, had their instructions been followed, undoubtedly he would have crossed at the intersection with the help of his father. True, it might reasonably have been contemplated by the parents that their instructions on occasion might be forgotten under childish impulses, but every parent is faced with this risk where his child is required to cross busy thoroughfares in order to reach school. The mother's care and conduct here were identical with that of thousands of parents whose children have reached school age, and we hold that such conduct is not evidence of negligence, but, on the contrary, is obviously the care which a reasonably prudent person of like position would exercise under like circumstances.

As to the clothing and helmet of the child, the same type of winter garment is worn extensively by children here during the winter months. No evidence was presented that these garments in any way were the cause of the accident. The suit was new, and its dark cloth must have contrasted with the snow on the ground so as to make the child stand out against the white background, plainly visible to anyone exercising the required observation. Nothing in the record indicates that the helmet or goggles impaired the child's vision, and to hold that they may have done so would appear to be pure speculation. Under such circumstances, we hold that no evidence was presented to indicate contributory negligence on the part of the child's parents, or either of them, and that the trial court properly ruled out consideration of this question by the jury.

■ Defendants contend that the verdict of $5,500 is excessive and apparently rendered under the influence of passion and prejudice. No evidence of misconduct.or other factors which might give rise to passion or prejudice is indicated in the record. The special damages sustained by plaintiff amounted to $1,609.65. The resulting general damages awarded were thus $3,890.35. The child had already reached the age where he was of assistance to his father at the filling station and to his mother in the home. They, of course, were entitled to his services during minority. As this court stated in Thoirs v. Pounsford, 210 Minn. 462, 465, 299 N. W. 16, 18:

"Comparison of verdicts is not a satisfactory method for determining the reasonableness of an award in a particular case. * * * In addition to the decedent's expectancy, each case involves a consideration of such variables as the decedent's character, health, habits, talents, prospects, earnings, contributions to his dependents, and many others which affect the amount of recovery and concerning which there is a permissible difference of opinion among juries."

Considering all of the factors above set forth and under the rule above indicated, we hold that the verdict is not excessive.

Affirmed.