WALTER FUSSNER, TRUSTEE FOR NEXT OF KIN OF
SANDRA JOAN FUSSNER, v. ALBERT R. ANDERT.

113 N. W. (2d) 355.

December 15, 1961—No. 38,223.

*Robins, Davis & Lyons, S. Robins,* and *Willard L. Converse,* for appellant.

*Tyrrell, Jardine, Logan & O'Brien* and *Raymond W. Fitch,* for respondent.

MURPHY, JUSTICE.

This case is before us on appeal from an order denying the plaintiff's motion for a new trial. The plaintiff father brought an action for the death of his 19-year-old daughter allegedly due to the wrongful act of defendant. The jury returned a verdict for $3,000, which plaintiff claims is inadequate. The verdict, which left general damages in the sum of $1,739 after payment of funeral expenses, resulted, according to plaintiff, from the charge to the jury which expressed "an antiquated and restricted concept of 'pecuniary loss.' " We are asked to reexamine the term "pecuniary loss" as used in Minn. St. 573.02, subd. 1, and to expand the scope and meaning of that term so as to make it applicable not only to damages resulting from money loss but to include as well damages for loss of aid, comfort, and society suffered by the next of kin of the deceased.

It appears from the record that plaintiff's daughter, Sandra Fussner, died from injuries received in an automobile accident which the jury found was caused by the negligence of the defendant. The father was 49 years of age at the time of the trial and is an engineer in a railroad car repair shop. Sandra was the younger of two daughters. Her mother died in 1952 after an illness which continued for 2 years. During the mother's illness the father relied upon Sandra for much of the housework, including cleaning and cooking. After the mother's death the two girls assumed the responsibility of maintaining the household until 1955 when the sister married. Thereafter those responsibilities were assumed by the decedent. In the fall of 1956 the father remarried. The second wife continued her employment outside the home. The

decedent at the time of her death was employed as a typist-receptionist at a department store and for the 6½-month period prior to her death earned $1,104.95. She purchased her own necessities, various items for the house, and gifts for her father out of her earnings. She paid $7 per week for her room, but beyond that no accounting was kept of what she spent for the household. There was a pleasant relationship between the decedent, her father, and stepmother, and she considered their home as her own. After her father's remarriage, there was no change in her routine of housework. Because the stepmother worked, the father relied upon her as before and it was customary for Sandra to start meals at night before the stepmother had returned home from work. The father testified:

"Sandra did all the washing, ironing, helped prepare the meals. My wife was working. Sandra was home every night. She would help wash the clothes, iron the curtains, scrub the floors, wax and shine the living room and bed rooms whenever they needed it."

There was some reference in the record to the daughter's engagement to a young man from whom she received a ring on her graduation from high school. There were no definite plans as to a wedding. At the time of Sandra's death, the young man had moved to Florida where he was living with his parents. In the meantime Sandra had accepted other dates.

In submitting the case to the jury the court gave the standard and approved instruction on the subject of damages:

"If you award the plaintiff damages they must be in an amount which will fully, fairly and adequately reflect the present monetary value of any future contributions in money or services which you find Sandra would have made to her father during the remainder of their lives had she not been killed in this accident. In other words, if your verdict is for the plaintiff you must decide from the evidence what pecuniary or financial loss the plaintiff has sustained, but you may not include any amount as compensation for the father's grief, sorrow or mental anguish, nor are you permitted to make an award for the father's loss of his daughter's comfort, society or companionship. You must confine your award to any monetary loss the plaintiff has proved by virtue

of his being deprived in the future of either financial contributions or contributions in services on the part of his daughter. Even though a child is not legally required to contribute to her parents after she becomes of age or becomes married, nevertheless you have the right to decide what voluntary contribution in money or services Sandra would have made to her father during the remainder of their lives."

There is no contention that the court was in error in telling the jury that they could not include damages for the father's grief, sorrow, or mental anguish. It is asserted that the error lies in the fact that the instruction limited recovery to loss in terms of dollars and that in context the instruction permitting recovery for "contributions in services" referred to labor or other employment performed pursuant to an understanding or agreement with the survivor and excluded from the consideration of the jury such real and substantial losses, which might be considered as having a pecuniary advantage to the survivor and which would be encompassed within the broad term of society and companionship.

In considering the issue presented, a brief reference may be made to the origin and development of death-by-wrongful-act statutes. At common law a civil action for wrongful death was not permitted; the only recourse against the wrongdoer being by criminal action. However, recovery for wrongful injury was allowed. It was, therefore, to the wrongdoer's financial interest if his injured victim died. To correct this inequity, Lord Campbell's Act[1] was adopted, which allowed designated beneficiaries a right of action for damages sustained by them, provided, of course, that the deceased, had he lived, would have had a cause of action for the wrongfully inflicted injury. The pertinent part of the act (§ 2) reads as follows:

"* * * in every such Action the Jury may give such Damages as they may think proportioned to the Injury resulting from such Death * * *."

While Lord Campbell's Act did not provide a yardstick by which dam-

---

[1]Lord Campbell's Act, 1846 (9 & 10 Vict. c. 93).

ages were to be measured, the English court held that damages were to be based on pecuniary loss.[2]

The original Minnesota act[3] was modeled after and enacted somewhat contemporaneously with Lord Campbell's Act. It was silent as to the kind and nature of damages to be recovered. The present Minnesota statute, Minn. St. 573.02, subd. 1, provides:

"* * * The recovery in such action is such an amount as the jury deems fair and just in reference to the pecuniary loss resulting from such death, * * *."

The foregoing provision was added by L. 1951, c. 697, and incorporates the pecuniary-loss standard expressed by this court in early decisions. These decisions involved the issue of excessive verdicts and expressed the view that the statute did not comprehend payment of damages for "mere loss of society or mental suffering" and that no pecuniary compensation can be given for "loss of the comfort or companionship of a relative nor for the pain and suffering of the deceased."[4]

All of the states have adopted death-by-wrongful-act statutes. While it appears that most of these statutes are similar in phraseology, the rules as to right of recovery for loss of deceased's society vary in the several jurisdictions. This is due to statutory differences and divergent judicial interpretation. It appears that 25 states have enacted statutes similar to Lord Campbell's Act. These statutes do not specifically require the loss to be a pecuniary one, but the courts generally construe their statutes to include this requirement. The California court in construing such a statute (California Code of Civil Procedure, § 377) held that damages recoverable for death are limited to the pecuniary loss suffered, but that such pecuniary loss includes loss of comfort, protection, and society of the deceased. Duclos v. Tashjian, 32 Cal. App. (2d) 444, 90 P. (2d) 140.[5] Other jurisdictions, however, hav-

---

[2]Blake v. Midland Ry. Co. 18 Q. B. 93, 118 Eng. Rep. 35.

[3]Rev. Stat. (Terr.) 1851, c. 78, § 3.

[4]Bolinger v. St. Paul & D. R. Co. 36 Minn. 418, 420, 31 N. W. 856, 857; Bremer v. Minneapolis, St. P. & S. S. M. Ry. Co. 96 Minn. 469, 470, 105 N. W. 494.

[5]Other states holding similarly are Alabama, Florida, Georgia, Idaho,

ing similar statutes have precluded recovery for such elements of loss.[6] Certain states, including Minnesota, have statutes requiring that damages recoverable for wrongful death be limited to resultant pecuniary loss.[7] Of these states, Arkansas and Michigan permit recovery for loss of society, comfort, and companionship as a pecuniary loss. It appears that a total of 24 states allow recovery for loss of society, comfort, and companionship, while 16 jurisdictions specifically deny such recovery. Legislatures of 5 states have recognized the trend toward allowing recovery for loss of society, comfort, and companionship and have specifically provided for such recovery in their wrongful death statutes.[8] The Wisconsin legislature has seen fit to set a maximum of $3,000 as compensation for such loss.

■ We agree with the plaintiff that the strict pecuniary-loss measure of damages, which limits recovery to the parent for the loss of earnings, contributions, and services in terms of dollars which the survivor might have expected to receive during the lifetime of the child, is unduly restrictive and its meaning should be expanded to conform to present-day needs and experience. As applied to a child, the narrow pecuniary-loss test, which excludes loss of aid, comfort, and society, may have met the needs of the community in the last century when our society was largely rural and a child might be considered an economic asset. The changes which have occurred in the social and economic life of the community since the test was first adopted require a reappraisal of its meaning and application. We must view the death-by-wrongful-act statute in the light of present-day conditions. It must be conceded that the majority of today's children render far less service to their parents than did children in the last century when the test was formulated. Because of child-labor laws and the great increase in

---

Indiana, Mississippi, Missouri, Montana, Pennsylvania, South Carolina, South Dakota, Utah, Virginia, Washington, and West Virginia.

[6]These jurisdictions are Alaska, Connecticut, Delaware, Iowa, Kentucky, North Dakota, Oklahoma, Oregon, and Tennessee.

[7]These jurisdictions are Arkansas, Illinois, Maine, Michigan, Nebraska, New Jersey, New Mexico, New York, North Carolina, Ohio, and Vermont.

[8]These jurisdictions are Hawaii, Kansas, Nevada, Wisconsin, and Wyoming.

school and college attendance, fewer children work outside the home. It should be agreed that generally the child's earnings may go no further than to supplement the parent's considerable financial outlay in educating and rearing him. To say as a general rule that a parent sustains a financial loss from the death of a minor child is not realistic. When the cost to the parent of raising and educating the child is considered, it is apparent that the strict adherence to the pecuniary-loss test would in many instances prevent any recovery whatever. Probable cost of raising him to maturity and educating him would be far greater than the provable value of his services.[9] We cannot agree that loss of earnings, contributions, and services in terms of dollars represents the only real loss the parent sustains by the death of his child. With the passage of time the significance of money loss has been diminished. Conversely, there is a growing appreciation of the true value to the parent of the rewards which flow from the family relationship and are manifested in acts of material aid, comfort, and assistance which were once considered to be only of sentimental character.

We have recognized in an action involving the death of a parent that the loss to the child of aid, counsel, and guidance is a pecuniary loss for which there may be recovery. We said:

"* * * To be included also are the imponderable elements of loss which arise because both wife and children have been deprived of the counsel, guidance, and constant, day-by-day aid which the normal father gives to such a family."[10]

Since the good offices involved in the parent and child relationship are largely reciprocal, it should be assumed that damages for this loss are as real to one as to the other. Authorities relating to the subject of damage for the loss of consortium characterize loss of comfort and society as a damage having a pecuniary value.[11]

---

[9]For a discussion of the development of social and economic conditions which have made the notion of loss of a child's services largely fictional, see Wycko v. Gnodtke, 361 Mich. 331, 105 N. W. (2d) 118.

[10]Hoppe v. Peterson, 196 Minn. 538, 541, 265 N. W. 338, 339. See, also, Bergstrom v. Frank, 213 Minn. 9, 4 N. W. (2d) 620.

[11]Skoglund v. Minneapolis St. Ry. Co. 45 Minn. 330, 47 N. W. 1071,

Moreover, it should be acknowledged that the death-by-wrongful-act statute is remedial in character and it is the court's duty to construe it liberally in light of current social conditions. In the recent case of Shumway v. Nelson, 259 Minn. 319, 322, 107 N. W. (2d) 531, 533, we did not hesitate to extend the application of the act in a case involving the marital-immunity doctrine where we felt to do so was in accord with present-day needs. We there said, "The statute is remedial in character and thus requires a liberal construction." In 1949 we extended the application of the statute to apply to death of a viable fetus resulting from prenatal injury.[12]

■ We have often said that the measure of damages is the money value to the survivor of the continuance of decedent's life, measured by the money value of what the evidence shows the decedent probably or with reasonable certainty would have contributed in money, property, or services during the remainder of his life.[13] Yet in case after case we have approved verdicts in amounts which have apparently exceeded the measure permitted by the strict pecuniary-loss rule. It may also be said that courts have been loath to scrutinize verdicts closely in an attempt to break them down to determine the actual money loss established. This is not only because such verdicts are by the very nature of the action speculative,[14] but also because of the

---

11 L. R. A. 222; Fowlie v. First Minneapolis Trust Co. 184 Minn. 82, 237 N. W. 846, 78 A. L. R. 589. The right to recover for this particular type of damage, which was formerly limited to the husband, has now by three important decisions been extended to the wife. Dini v. Naiditch, 20 Ill. (2d) 406, 170 N. E. (2d) 881 (1960); Montgomery v. Stephan, 359 Mich. 33, 101 N. W. (2d) 227 (1960); Hoekstra v. Helgeland, 78 S. D. 82, 98 N. W. (2d) 669 (1959).

[12]Verkennes v. Corniea, 229 Minn. 365, 38 N. W. (2d) 838, 10 A. L. R. (2d) 634. See, also, Amann v. Faidy, 415 Ill. 422, 114 N. E. (2d) 412; Hall v. Murphy, 236 S. C. 257, 113 S. E. (2d) 790; Wendt v. Lillo (N. D. Iowa) 182 F. Supp. 56; Stidam v. Ashmore, 109 Ohio App. 431, 167 N. E. (2d) 106; Keyes v. Construction Service, Inc. 340 Mass. 633, 165 N. E. (2d) 912.

[13]5 Dunnell, Dig. (3 ed.) § 2617.

[14]In Bergstrom v. Frank, 213 Minn. 9, 11, 4 N. W. (2d) 620, 621 (1942), we said:

emotional factors involved, allowance is made for elements of loss which are not within the limits of recovery set by the rule.

An examination of representative and comparable authorities relating to verdicts in death-by-wrongful-act actions seems to indicate that we have in practice approved compensation for damages which are not strictly of a pecuniary nature.

In Waggoner v. Gummerum, 180 Minn. 391, 231 N. W. 10 (1930), we sustained an award of $6,000 for a 23-year-old girl who resided at home. She was employed and contributed $20 to $25 a month to her mother. The father said that the work that she did in the home was ample compensation for her board. We there said (180 Minn. 394, 231 N. W. 12):

"* * * The verdict is large, but the trial court permitted it to stand; and we have reached the conclusion that it is not so clearly excessive as to warrant this court in setting it aside as rendered under the influence of passion or prejudice."

In Christensen v. Pestorious, 189 Minn. 548, 250 N. W. 363 (1933), we permitted a verdict of which $5,057.86 was general damages to stand for the death of an 18-year-old girl. She assisted her father, who operated a barber shop and dry-cleaning agency. We said (189 Minn. 553, 250 N. W. 365):

"* * * The evidence shows that she was bright and active, devoted to her parents, and much inclined to help them. * * *

\* \* \* \* \*

"It is conceded that the verdict is liberal or large. It has the approval of the trial court. It might have been reduced in a substantial amount. Our consideration of the evidence does not lead us to think that we should reduce it."

---

"* * * Of course, the pecuniary loss to the beneficiaries resulting from the death of one by wrongful act measures the recovery. But as to many matters affecting the amount of such loss, there is usually no evidence available at the time of trial. How long would the life of decedent have continued had not defendant's wrongful act cut it short? How long will the life of the beneficiary last? Much must be left to probabilities or reasonable possibilities."

In Hartel v. Warren, 196 Minn. 465, 468, 265 N. W. 282, 283 (1936), we sustained a verdict for $6,000 for the death of a 19-year-old girl who lived at home. We there said:

"* * * She worked at home, replacing a maid. The annual value of her services was between $400 and $500. She was obedient, home-loving, and affectionate toward her father and mother, sister, and brothers."

In Ekdahl v. Minnesota Utilities Co. 203 Minn. 374, 382, 281 N. W. 517, 522 (1938), we sustained an award of $6,250 for a 15-year-old boy. We there said:

"* * * While the verdict as reduced is liberal, we do not regard it so large that the inference is warranted that the jury were actuated by passion or prejudice."

In support of this verdict our court cited authorities from California and Louisiana, in which jurisdictions damages for loss of society and companionship are allowed.

In Bergstrom v. Frank, 213 Minn. 9, 4 N. W. (2d) 620 (1942), the question was the reasonableness of a verdict of $5,000 for the death of a 48-year-old mother in favor of her two adult children who were 22 and 23 years of age. It is significant that in rationalizing our approval of the verdict we said (213 Minn. 10, 4 N. W. [2d] 621):

"The evidence shows the Bergstroms were an ideal family. The mother was active and devoted to her children, and they in turn were devoted to and helpful to her and one another."

In Deach v. St. Paul City Ry. Co. 215 Minn. 171, 181, 9 N. W. (2d) 735, 740 (1943), we sustained a verdict of $5,500 for the death of a 5-year-10-month-old boy where it appeared that the special damages amounted to $1,609.65. We noted that:

"* * * The child had already reached the age where he was of assistance to his father at the filling station and to his mother in the home."

While this decision takes notice of the fact that the parents were entitled to his services during minority, it does not take into considera-

tion in arriving at the pecuniary loss the substantial monetary outlay which his education and rearing would require.

In Gordon v. Pappas, 227 Minn. 95, 100, 34 N. W. (2d) 293, 296 (1948), we sustained a verdict of $8,500 for the death of a 21-year-old boy who contributed to the support of his father and mother. In noting that the verdict was not excessive, we said that the boy "had a deep sense of obligation toward his parents and a disposition to contribute to their support," and was capable of earning substantial pay which he "was disposed to share with his parents."

In Moore v. Palen, 228 Minn. 148, 36 N. W. (2d) 540 (1949), we sustained verdicts of $7,010.15 in favor of each parent of a 19-year-old husband and an 18-year-old wife who were asphyxiated. At the time of their death the young couple were on their own and planning to be partners in the operation of a restaurant. Prior to this time they had been of assistance to their parents. We there said (228 Minn. 154, 36 N. W. [2d] 543):

"Our decisions make it clear that in actions for wrongful death damages for the potential support of children can be awarded to the parent beneficiaries, even though the children be adults and have been separated from the parents in terms of aid or benefit to the parents at the time of the wrongful death."

In Schroht v. Voll, 245 Minn. 114, 71 N. W. (2d) 843 (1955), we approved a verdict of $17,500 for the death of an 18-year-old boy. We said (245 Minn. 123, 71 N. W. [2d] 849):

"* * * The facts of the instant case provide a sufficient basis to sustain the damages awarded by the jury. Decedent Marlowe Schroht according to the testimony was an honest, conscientious, dependable young man of 18. He worked several nights after school for neighbors. He sang at weddings and funerals in the community. His parents operated a farm on which there was considerable indebtedness. Marlowe was very interested in farming and had given his parents a large amount of help. He had made plans to go into partnership with his father in raising hogs. The jury could reasonably find that he would have remained loyal to his parents and would have helped them considerably. The reasonableness of the verdict is not to be tested by a

yardstick applicable to all cases since the peculiar facts of each case must be considered and weighed in the light of such variables as the decedent's character, health, habits, talents, prospects, earnings, and parental contributions."

In Tollefson v. Ehlers, 252 Minn. 370, 90 N. W. (2d) 205 (1958), a case involving the death of a young man 24 years of age, we sustained a verdict given to his father, aged 71, of $16,897.61. It appears from the decision that the total value of the son's services to his father about the farm where the father lived "was about $100 a month." But we there went on to emphasize that the compensation was not limited to those items of damage which might be measured by dollar value. We said (252 Minn. 377, 90 N. W. [2d] 210):

"* * * But decedent performed other services too. Since the death of his mother in 1948, he had also helped with the housework as well as doing all the heavy farm labor. He had washed floors, cooked meals, washed dishes, and cared for his father after his operation, and when he was ill with the flu. They attended church together regularly and decedent drove plaintiff wherever and whenever the latter wished to go fishing or visiting and then would pick him up and drive him back home. On occasion he would also give money to the plaintiff. All of these factors might properly have influenced the jury in making its award."

An examination of these and other authorities compels the conclusion that courts and juries in the exercise of their judgment and experience have not conformed to the limited pecuniary-loss test. It should be no secret to the bar or the courts that jurors have circumvented the test in order to provide substantial recoveries which they feel are equitable under the circumstances. Courts have sanctioned this practice by holding that such verdicts are not excessive. It appears from a review of our authorities that damages are awarded not only on the basis of contributions and such services as the evidence may establish but for those additional elements of loss within the broad definition of society and companionship which include aid, advice, comfort, and protection which the survivor might reasonably expect from the decedent and which, while not having an easily determined market value, are fully

justified since they are elements· of loss for which money can supply a practical substitute.

It is true that we have always prefaced our holdings in these cases by a statement adhering to the strict pecuniary-loss standard. Nevertheless, it should be conceded that there is threaded through these cases, as a measure of added support, the secondary consideration that damages may be recovered for elements of loss which may not ordinarily be considered as economic in character but which are, nevertheless, real. This approval, which seems to have developed under a policy of judicial tolerance, emerged clearly in Tollefson v. Ehlers, *supra,* where we said in effect that the loss of aid, comfort, and society of the decedent is compensable where there is evidence of particular' acts of service which contribute to the comfort, health, and well-being of the survivor.

If we approve verdicts which include damages for elements of loss which are not ordinarily equated in dollar value, jurors should in the interest of fairness and uniformity be so instructed. Under the instructions now used the jurors may continue by their verdicts to circumvent the court's instructions by allowing damages for elements not included in the narrow definition of pecuniary loss; or, as apparently happened here, they may take the court at its word and apply the standard strictly. We do not feel that jurors should be told that loss of society and companionship which amounts to nothing more than a sentimental attachment should be compensable. We are, however, of the view that the instruction should be revised to accord with modern practice and experience. The jurors should be told that where the evidence warrants recovery the survivor may be compensated not only for actual pecuniary loss of contributions and services but should be compensated as well for loss of advice, comfort, assistance, and protection which the jury might find to be of pecuniary value and which the survivor could reasonably have expected if the decedent had lived.

It is said by the defendant that to expand the definition of the term "pecuniary damage" will, because of the emotional nature of unlawful death actions, result in excessive verdicts. This argument was considered by the Supreme Court of South Dakota in Hoekstra v. Helgeland, 78 S. D. 82, 98 N. W. (2d) 669, in an action involving

the issue whether there should be extended to the wife the right to recover for loss of consortium resulting from the negligent injury of her husband. In discussing the consequences of possible excessive verdicts, it was said (78 S. D. 107, 98 N. W. [2d] 682):

"Juries are being asked daily to place values for similar damages in alienation of affection actions, on pain and suffering, to balance slight against gross negligence and mitigate damages accordingly in personal injury actions, on malice in actions where exemplary damages are allowable and in other cases which are as difficult as the case before us, so this should not be set up as a bar or argument against such recovery."

If it appears that a verdict is excessive, courts have the duty to reduce it to an amount reasonably commensurate with proven damages, or, if the legislature so desires, it may do as Wisconsin did— limit the amount recoverable by a statutory provision.

■ We cannot agree with the plaintiff that the trial court erred in denying his requested instruction to the effect that the statutes of this state impose a legal duty upon a child to support a parent. Section 261.01 provides:

"Every poor person who for any reason is unable to earn a livelihood shall be supported by his children, parents, brothers, and sisters, grandchildren or grandparents; and relatives having sufficient ability shall be called on for such support in the order above named; provided, that a person who becomes a pauper from intemperance or other bad conduct shall not be entitled to support from any relative except parent or child. Every such relative who refuses or fails to support any poor person whom he is bound by law to support, when directed by the board or council of the county, town, city, or village in which such person has a settlement, shall forfeit and pay to such county, town, city, or village, for the use of the poor thereof, such amount as the court may determine, not exceeding $25 per month, to be recovered in any court having jurisdiction."

At common law an adult is under no duty or obligation to contribute to the support of his parents. Whatever duty rests upon him in this

respect must be based either upon contract or statute. The duty to support an indigent person imposed by § 261.01 is placed upon "his children, parents, brothers, and sisters, grandchildren or grandparents," in that order. The statute further provides for enforcement of the liability imposed by forfeiture to the county or municipality in such amount as the court may determine, not exceeding $25 per month. We are of the view that the legal obligation of the child under § 261.01 is limited to the conditions prescribed by the statute and may not be enforced in an action against a third person.

Reversed and new trial granted on the issue of damages.

DELL, CHIEF JUSTICE (dissenting).

I dissent.

## ON PETITION FOR REHEARING.

On February 2, 1962, the following opinion was filed:

PER CURIAM.

The defendant asks that the foregoing decision be modified so as to apply prospectively only. He argues that the trial court correctly relied on prior authorities and that he has been subjected to undue hardship by the change established by this decision. While there would be merit to this argument if it were applied to the subject of contract or property law where the parties planned their conduct in advance in accordance with existing law, we are of the view that the same considerations do not exist with reference to negligence actions, particularly in this case where the conduct of the defendant was in nowise controlled by the existing law of the state at the time the accident happened.

It is next argued that a new trial should not be limited to the issue of damages but should include the issue of liability as well. This contention may be disposed of by pointing out that where the issue of liability has been fairly and fully tried in the lower court the practice of the supreme court has been to order a new trial upon the question of damages only. Propper v. Chicago, R. I. & P. Ry. Co. 237 Minn. 386, 54 N. W. (2d) 840, 35 A. L. R. (2d) 459.

The defendant further argues that the case was tried and determined under the law as it existed prior to our decision and that he should not

be burdened with the costs and disbursements of this appeal. We think there is merit to this claim. Because the rule established by the foregoing opinion was not in effect at the time of the trial, it would not be fair under the circumstances to require the defendant to pay the full costs of the appeal. In H. P. Droher & Sons v. Toushin, 250 Minn. 490, 503, 85 N. W. (2d) 273, 282, we pointed out that under our statutes and the case law we have no authority to deny the plaintiff his disbursements if we grant a new trial on any issue. Under the circumstances in that case, where we thought it would be unconscionable to burden the defendants with the costs and disbursements of the appeal, we reached what we felt was a fair and just disposition of the issue by granting the new trial on the condition that the prevailing party waive taxation of costs and disbursements. We feel the circumstances here justify the same action. Accordingly, the opinion in this case is amended to provide that a new trial will be granted on the issue of damages only if the plaintiff will file with the clerk of this court within 10 days from the issuance of this opinion his consent in writing to waive taxation of all costs and disbursements in this case. The remittitur in this case, having issued prematurely because of clerical mistake, is hereby recalled, and the cost judgment heretofore entered is vacated.

MR. JUSTICE OTIS took no part in the consideration or decision of this case.

MR. JUSTICE ROGOSHESKE, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.