**Paul Allen FRUMKIN, Appellee,**

v.

**MAYO CLINIC, Appellant,**

**Paul Allen FRUMKIN, Appellant,**

v.

**MAYO CLINIC, Appellee.**

**Nos. 91–1803, 91–1804.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 11, 1991.

Decided May 28, 1992.

William Robert Stoeri, Minneapolis, Minn., argued (Creighton R. Magid, Minneapolis, Minn., and Benjamin Hippe, Rochester, Minn., on brief), for Mayo Clinic.

Wilbur W. Fluegel, Minneapolis, Minn., argued (Douglas E. Schmidt, Minneapolis, Minn., on brief), for Frumkin.

Before JOHN R. GIBSON and BEAM, Circuit Judges, and KAUFMAN,* Senior District Judge.

JOHN R. GIBSON, Circuit Judge.

The Mayo Clinic appeals from a judgment entered against it after a second jury trial on Paul A. Frumkin's medical malpractice claim. Mayo doctors had performed surgery on Frumkin to relieve severe and chronic headache pain. Following the surgery, which involved severing a major nerve, Frumkin complained of a side effect called "anesthesia dolorosa," in which the absence of sensation is experienced as pain. After filing suit, Frumkin threatened the lives of two Mayo physicians who were to testify at trial. Mayo moved to dismiss based on these threats; the district court denied the motion. The jury found Mayo not negligent on Frumkin's claim that doctors failed to warn him about the possibility of anesthesia dolorosa, but awarded Frumkin $334,000 in damages because doctors failed to advise him on how to properly care for his left eye, which no longer experienced sensation. The district court grant-

* The HONORABLE FRANK A. KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.

ed a new trial on all eye care damages. The jury in the second trial awarded Frumkin $890,301 for eye care damages. On appeal, Mayo argues that the district court erred by (1) granting a new trial on *all* eye care damages rather than just for lost earnings and medical expenses; and (2) failing to dismiss Frumkin's suit following his threats to Mayo's witnesses. Frumkin cross appeals, arguing that the district court erred in failing to award prejudgment interest and in deducting social security disability benefits as collateral source payments. We affirm the district court's denial of the motion to dismiss on the basis of Frumkin's threats, but reverse in part its order granting the new trial and order that judgment be entered in accordance with this opinion. We also reverse the district court's decisions to deny prejudgment interest on the disability and disfigurement award and on future damages, and to reduce Frumkin's award by the amount of his social security disability benefits.

Frumkin, a lawyer, began to suffer from excruciating and chronic cluster headaches while in college. Following graduation from law school he began to suffer more intense symptoms and was hospitalized on three occasions. He began to miss more and more work and took a large number of medications. In 1982, he contacted physicians at the Mayo Clinic after his regular physician suggested a new surgical procedure to relieve the pain. The procedure, called a suboccipital craniectomy and sectioning of the trigeminal nerve, involves severing a major nerve in the head and would result in a complete and permanent loss of sensation on the left side of Frumkin's face. By eliminating sensation where Frumkin experienced the headache pain, the surgery would make it impossible for him to feel the headaches. Frumkin discussed the nature of the surgery and its consequences with a Mayo neurologist, Dr. J. Keith Campbell, and with a Mayo neurosurgeon, Dr. W. Richard Marsh. Dr. Marsh performed the surgery, which did eliminate the headache pain. Eventually, however, Frumkin began to complain of a side effect of the surgery called "anesthesia dolorosa," in which the brain responds to the absence of sensation in a way that causes the individual to experience pain.

Frumkin also experienced problems with his left eye, in which he had lost both sensation and the tearing function as a result of the surgery. Two months after the surgery, he suffered from an abraded cornea, which he contended resulted from Mayo's failure to provide proper post-surgical instructions for the care of his eye. The following month, he had his eyelid temporarily sewn shut to promote healing of the eye. Soon afterward, he elected to undergo "conjunctival flap surgery," in which the membrane underneath the upper eyelid is drawn down over the eye. This surgery obviated the need for further active eye care, but reduced Frumkin's vision in the left eye.

Frumkin then brought this diversity action alleging that Mayo doctors did not advise him of the risk of anesthesia dolorosa and thus failed to obtain his informed consent, and that Mayo had failed to give him adequate instructions for the post-surgical care of his left eye. Before trial, Frumkin made telephone calls to Drs. Campbell and Marsh, who were also named as defendants, and threatened their lives. Mayo moved to dismiss on the ground that the threats compromised its ability to defend the lawsuit. The district court held a hearing on the motion. Frumkin admitted the threats and explained that they resulted from a combination of his pain, anger and alcohol-induced state. The district court denied the motion to dismiss, but enjoined Paul and Nancy Frumkin from directly contacting any of the defendants or their employees or witnesses.

The case was tried, and Frumkin presented extensive evidence regarding anesthesia dolorosa and some evidence with respect to his eye problems. The particular issues make it unnecessary that we engage in a detailed discussion of the medical evidence at trial or for that matter, the evidence with respect to damages.

The jury returned a verdict in favor of Mayo on the anesthesia dolorosa, finding that doctors had told Frumkin of this potential side effect before surgery and had

thus obtained his informed consent. The jury also found, however, that Mayo doctors had failed to instruct Frumkin on proper post-operative eye care. Interrogatories in the special verdict form required specific findings on eight damage issues. The jury awarded Frumkin $105,000 for past lost earnings, $20,000 per year for ten years for future lost earnings, $23,000 for past medical expenses, and $6,000 for past pain, disability and disfigurement. The jury awarded Frumkin nothing for future pain, disability, or disfigurement, past or future embarrassment and emotional distress, or future medical expenses. Frumkin moved for a new trial. Mayo moved for a judgment notwithstanding the verdict, or, alternatively a partial new trial on the eye care issue (including liability) or on eye care damages only, limited to past and future lost earnings and past medical expenses. Mayo did not specifically attack the $6,000 award for past pain, disability and disfigurement.

The district court granted a partial new trial. *Frumkin v. Mayo Clinic,* No. 4–87–188 (D.Minn. Apr. 21, 1989). It first ruled that the repeal of Minn.Stat. § 604.07 (1986), which provided a formula for the discounting of future damages, required a partial new trial on the issue of damages for lost future earnings. Slip op. at 29–30. It followed *Olsen v. Special School Dist. #1,* 427 N.W.2d 707 (Minn.Ct.App.1988), which held that for cases pending on or after the effective date of the repealing legislation, section 604.07 would not be applicable. *Id.* at 710. The district court concluded that a new trial would be required on issues of future damages to permit the jury to be informed about discounting. *Frumkin,* slip op. at 30.

The district court then turned to the jury awards for past and future lost earnings. It first stated that the amount of the jury award was speculative, then discussed the evidence and found that none supported the award for past or future lost earnings, and detailed the lack of testimony in this respect. It concluded its discussion as follows: "In light of all of the evidence submitted at trial, the Court 'is left with a definite and firm conviction that the jury has erred' ... in awarding damages for past and future lost wages of $305,000." Slip op. at 31 (quoting *Ryan v. McDonough Power Equip., Inc.,* 734 F.2d 385, 387 (8th Cir.1984)). The district court also concluded that the jury award of $23,000 for past medical expenses must be set aside as "nothing more than speculation" because the only evidence supporting the award did not allocate expenses between treatment of the eye and treatment of anesthesia dolorosa. Slip op. at 32. The district court did not discuss the jury's award of $6,000 for past pain, disability and disfigurement, nor did it discuss the jury's decision not to award damages in the remaining categories. Without delineating the scope of its order, the district court granted a "partial new trial[ ] on the question of damages for Paul Frumkin's loss of vision." Slip op. at 39.

The parties then sought clarification of the scope of the retrial, with Mayo asserting that no retrial was necessary in the damage categories in which the jury had made no award. The district court, in a brief second order, reiterated that the retrial would be limited to damages suffered by Frumkin on the eye care issue. Order of Aug. 28, 1989. It offered no reason for ordering a retrial on the items of damage it had not discussed in the first order.

At a pretrial conference, Mayo again pressed the issue of the new trial's scope. The court stated: "I think all those things, [pain, suffering, disability, disfigurement, shame, humiliation, embarrassment, inconvenience] will be incorporated because I don't think the jury ever really addressed those issues relating to the eye."

The case was then tried again on the issue of eye care damages. The second jury awarded Frumkin $45,000 for past lost earnings, $166,000 for future lost earnings, $18,819 for past medical expenses, $482 for future medical expenses, $250,000 for past disability and disfigurement, $160,000 for future disability and disfigurement, and $250,000 for past embarrassment and emotional distress. This appeal followed.

### I.

On appeal, Mayo challenges the district court's decision to include categories of

what it calls "soft damages"—embarrassment and emotional distress, and pain, disability and disfigurement—in the retrial. Mayo contends that the district court's order must be reversed in part because it offered no reasons for including these types of damages in the new trial order. Mayo urges this court to affirm the new trial order only insofar as it granted a retrial on past and future lost earnings and medical expenses.

Frumkin argues that the district court properly exercised its discretion in granting the new trial on damages, that the various items of damages were so intertwined that the grant of a new trial on some but not others would be unjust, and that, in any case, Mayo "invited" the error of which it complains.

The district court's grounds for granting the partial new trial are less than clear, but we have no doubt that its order is based upon the weight of the evidence. The court's discussion that no evidence supported the award of damages could relate both to a ruling for judgment notwithstanding the verdict or a new trial. However, the conclusion reached by the court and its reliance on *Ryan*, which it cited early in its opinion regarding the standard for granting a new trial on weight of the evidence grounds, demonstrate that the basis for its order was that the verdict was against the weight of the evidence.

■ A district court's decision to grant a new trial on weight of the evidence grounds "involves an analytical exercise peculiarly within the district court's province." *Stafford v. Neurological Medicine, Inc.*, 811 F.2d 470, 474 (8th Cir.1987). The district court's authority is not properly exercised, however, unless it gives a statement of reasons "articulat[ing] the analysis utilized to justify upsetting a jury's verdict." *Id.* See also *Goldsmith v. Diamond Shamrock Corp.*, 767 F.2d 411, 416 (8th Cir.1985).

The district court, when considering a motion for new trial on weight of the evidence grounds, "can disturb a jury verdict only to prevent a miscarriage of justice." *McGee v. South Pemiscot School Dist.*, 712 F.2d 339, 344 (8th Cir.1983). We have recently reviewed the many cases of this circuit addressing such motions in *White v. Pence*, 961 F.2d 776 (8th Cir.1992), in which we made clear that the district court must find that the jury's verdict was against the "great," "clear," or "overwhelming" weight of the evidence. *Id.* at 780–82. *See also McBryde v. Carey Lumber Co.*, 819 F.2d 185, 189 (8th Cir.1987); *Fireman's Fund Ins. Co. v. Aalco Wrecking Co.*, 466 F.2d 179, 187 (8th Cir.1972), *cert. denied*, 410 U.S. 930, 93 S.Ct. 1371, 35 L.Ed.2d 592 (1973). The district court is free to " 'weigh the evidence [and] disbelieve witnesses, and [may] grant a new trial even where there is substantial evidence to sustain the verdict.' " *Brown v. Syntex Lab., Inc.*, 755 F.2d 668, 673 (8th Cir.1985) (citation omitted).

■ In view of the district court's separate treatment of each of the jury's findings in response to the interrogatories, we will examine the new trial order in segments. The court followed its original order granting the partial new trial with the brief order of August 28, 1989, and did not explain the full scope of the new trial until the discussion in pretrial conference. While Mayo specifically does not attack the court's decision to include past and future lost wages in the retrial, the new trial finds its genesis in the original order of April 21, 1989, which focused on the evidentiary support for these awards. Frumkin's position is that the district court did not err in the order granting a new trial in any respect. In view of the fact that neither of the parties attacks that portion of the court's order granting a new trial on wages, we allow it to stand. We also observe that the court's grant of a new trial on future lost wages is required by an independent ground—the repeal of Minn.Stat. § 604.07.

■ Mayo also does not challenge the court's decision to include medical expenses in the second trial. We simply observe that we believe this decision to be on a different footing, however, as the district court's discussion makes plain that no evidence supported the award and that it was speculative, with nothing to suggest consid-

eration of weight of the evidence. These findings are sufficient to justify either the entry of judgment notwithstanding the verdict on this particular award, or, in the discretion of the district court, the grant of a new trial on this issue.[1]

■ The most serious problem presented relates to past and present embarrassment and emotional distress, and past and present pain, disability, and disfigurement. These issues, although submitted by separate interrogatories, were not discussed by the district court in its original April 1989 order granting a partial new trial on the question of damages, and were not specifically discussed until the pretrial conference. However, because the April 1989 order was the starting point for granting the partial new trial on damages, and is the only one in which reasons for granting the new trial are given, it is necessary that we look closely at this order. This order, while referring to the lack of evidence on specific items of damage and expressing the belief that the jury's award was speculative, then concludes with the observation that in light of all of the evidence, the court had the definite and firm conviction that the jury had erred. Slip op. at 31 (citing *Ryan*, 734 F.2d at 387).[2] While neither party asks us to reverse this order as it pertains to wages and medical expenses, we must examine it as the predicate for the later expansion that included all items of damage. We are satisfied that the district court's analysis is inadequate to support the grant of a new trial on all items of damage, as the district court made no finding that the verdict was against the great, clear or overwhelming weight of the evidence, nor that a miscarriage of justice had occurred. We have recently pointed to the significance of these verbal formulae in *Pence*, where we cited the cases from our circuit requiring such findings as a basis for the grant of new

trial. *Pence*, at 781. There is simply no such finding to support the grant of new trial as to past and present embarrassment and emotional distress and past and present pain, disability and disfigurement. As the April 1989 order is the starting point for the partial new trial on damages, it follows that the later expansion by the court rested on a faulty foundation. We now turn to the later rulings of the district judge expanding the scope of the new trial.

The only reason given by the district judge directly addressing these other items of damage was in the pretrial conference when he stated that he did not think "the jury ever really addressed those issues relating to the eye." The answers to the interrogatories in the special verdict, however, make clear that the jury found liability with respect to eye injury alone, and awarded $0 for these items of damage, except for past pain, disability, and disfigurement, on which it awarded the specific sum of $6,000. In neither its brief second order nor during the pretrial conference did the court make a finding that a miscarriage of justice had occurred, or that the verdict was against the great, clear, or overwhelming weight of the evidence. Thus, the later orders expanding the scope of the new trial also failed to meet the requirements our cases have set down, and must therefore be reversed.

Another reason exists for our decision. The district court's finding that the jury never "really addressed those issues" runs contrary to the jury's specific answers to the interrogatories. We emphasized in *Pence* that the district court must articulate an adequate statement of reasons when granting a new trial on weight of the evidence grounds. Op. at 781. We have reversed the grant of a new trial when the district court's analysis was nothing more

---

1. *See Hoover v. Valley West DM,* 823 F.2d 227, 230–31 (8th Cir.1987).

2. Our holding makes it unnecessary that we consider the language in *Ryan* that a new trial may be granted on weight of the evidence if the district judge "is left with a definite and firm conviction that the jury has erred." *Ryan,* 734 F.2d at 387. *Ryan* is the only one of our recent

cases to use this language, which is borrowed from the clear error doctrine, and none of the cases *Ryan* cites in support of this sentence stand for the proposition. We realize that one panel may not overrule an earlier decision of another panel. The disposition we have made of this issue makes it unnecessary that we further consider *Ryan*'s formulation.

than conclusory, *see Stafford*, 811 F.2d at 474, or was too abbreviated to demonstrate an appropriate balancing, *see Goldsmith*, 767 F.2d at 416. Thus, not only the predicate order of April 21, 1989, but also its expansion in the pretrial conference rested on legally inadequate grounds. These reasons require that we reverse the order granting a new trial as to the issues of past and present embarrassment and emotional distress, pain, disability, and disfigurement, and accordingly, require that the jury's verdicts entered in the second trial as to those issues be set aside.

In conclusion, we affirm the district court's order insofar as it granted a new trial on past and future lost wages and past and future medical expenses. We reverse the district court's decision to grant a new trial on all other damages and order it to reinstate the first jury's verdict on these items. We are not persuaded by Frumkin's argument that all of the items of damage are so intertwined that they must be tried together. Nor are we persuaded by his argument that any error was "invited" by Mayo because it moved for a partial new trial. This argument overlooks the fact that Mayo's motion, insofar as it requested a new trial on damages, sought a retrial only on lost wages and past medical expenses.

## II.

■ Mayo's second argument is that the district court erred in denying its motion to dismiss Frumkin's case in response to Frumkin's intimidation of witnesses. During Memorial Day weekend in 1985, while the suit was pending, Frumkin telephoned two of Mayo's witnesses and threatened to kill them. He phoned Dr. W. Richard Marsh, who had testified by deposition a day earlier that Frumkin had been told before surgery of the risk of anesthesia dolorosa. In repeated calls, Frumkin accused Marsh of lying at his deposition and threatened to kill Marsh before killing himself. Franklin also called Dr. J. Keith Campbell and told him, "[B]efore I die, I'm going to ... take you with me."

Mayo moved to dismiss the case on the ground that the death threats against its witnesses impaired its ability to defend the case and undermined the judicial process. Mayo supported its motion with medical records indicating Frumkin had a history of suicide attempts, violence, and alcohol and substance abuse. Mayo introduced the opinions of several psychiatrists that Frumkin was potentially both homicidal and suicidal.

Frumkin conceded that he made the threats, but claimed that his behavior was the result of pain, anger, and drunkenness. He promised the courts the threats would "never be repeated."

Before ruling on the motion to dismiss, the district court had entered a restraining order on October 7, 1985, enjoining Frumkin from contacting Mayo's agents, employees, witnesses or consultants. Frumkin had complied with the restraining order during the intervening months between the October 7 order and the court's ruling on the motion to dismiss in February 1986. Though the court considered Frumkin's behavior "inexcusable," Bench Memorandum of Feb. 21, 1986, at 4, and recognized that given Frumkin's psychiatric history, his "threats must be taken seriously by all involved," *id.* at 2, the court declined to dismiss the suit. Instead, it issued an order stating that if the Frumkins violated the terms of the restraining order, the case would be dismissed. Order of Feb. 21, 1986, at 2.

On appeal, Mayo argues that the district court "had a duty to dismiss the action," because that was the only way to protect Mayo's rights and the court's integrity.

We give considerable deference to the district court's actions in addressing a litigant's misconduct. The district court is "accorded considerable latitude in dealing with serious abuses of the judicial process and [its] determination to dismiss a case for such a reason should be reviewed only for abuse of discretion." *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1117 (1st Cir.1989). The district court must give " 'thoughtful consideration,' " *id.* at 1118 (citation omitted), to all the relevant factors presented in

the case, but it is not for us to substitute our own judgment for the district court's. *Cf. National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976). ("The question, of course, is not whether this Court, or whether the Court of Appeals, would as an original matter have dismissed the action; it is whether the District Court abused its discretion in so doing").

In this case, the district court fully considered the relevant factors, including Frumkin's egregious behavior and his troubled psychiatric background, as well as the various options available to the court. Bench Memorandum of Feb. 21, 1986, at 2–4. The court's choice of a restraining order, backed up with the assurance that it would dismiss Frumkin's suit if he disobeyed the restraining order, adequately protected both Mayo and the integrity of the court. We have no doubt that Frumkin's misconduct was so serious that, had the district court chosen to dismiss this case, we would have found it difficult to reverse. However, the injunctive order as entered was well within the district court's discretion to craft an appropriate remedy. We affirm the court's denial of the motion to dismiss.

### III.

Frumkin cross-appeals, arguing that the district court erroneously denied him prejudgment interest on his damages for embarrassment and emotional distress; disability and disfigurement; and for his future damages. Since our holding above moots the question as to embarrassment and emotional distress, we need not consider those issues.

■ Minn.Stat. § 549.09 subd. 1(b) (1990) (amended effective July 1, 1991) allows for prejudgment interest on "pecuniary damages." Minnesota case law developed in the context of wrongful death cases has construed the term "pecuniary damages" to include items in addition to "actual monetary loss," *Rath v. Hamilton Std. Div. of United Tech. Corp.,* 292 N.W.2d 282, 285 (Minn.1980). These items include "loss of advice, comfort, assistance, and protection which the jury might find to be of pecuniary value," *Fussner v. Andert,* 261 Minn. 347, 113 N.W.2d 355, 363 (1961), but which would not have taken the form of a monetary benefit had the decedent lived. On the other hand, Minnesota law recognizes a distinction between these "services" and the purely emotional damages resulting from "grief, sorrow or mental anguish." *Id.* 113 N.W.2d at 357.

Although the district court characterized Frumkin's damages for disability and disfigurement as non-pecuniary damages, Order of Oct. 10, 1990, at 6, the term "disability" damages seems to refer to the loss of the ability to do things for oneself other than earn money (loss of the ability to earn money was submitted to the jury as "loss of earnings"). The category of "disability damages" in a personal injury suit is analogous to the category of damages from "loss of advice, comfort, assistance and protection" in a wrongful death suit—both represent loss of services (to oneself or others) that would not have been remunerated absent the tort. This sort of damage has been characterized as "pecuniary" under Minnesota law. Disfigurement damages are closely akin to disability damages and should be categorized similarly. Therefore, prejudgment interest should have been awarded on the jury's disability and disfigurement award.

Frumkin also argues that the district court erred in failing to award prejudgment interest on future damages. Minn.Stat. § 549.09 subd. 1(b) was amended during the pendency of this lawsuit to prohibit the award of prejudgment interest on future damages. *See* Minn.Stat.Ann. § 549.09, Historical Note (1988) (discussion of 1986 amendment). The district court applied the amendment to bar interest on future damages in Frumkin's case, Order of Oct. 10, 1990, slip op. at 5, but Mayo concedes that the amendment should not apply, and that prejudgment interest should accrue on those types of future damages that are otherwise eligible for prejudgment interest. *See Hodder v. Goodyear Tire & Rubber Co.,* 426 N.W.2d 826, 841 n. 18 (Minn.1988),

*cert. denied,* 492 U.S. 926, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989); *Herbst v. Northern States Power Co.,* 432 N.W.2d 463, 468–69 (Minn.Ct.App.1988).

Therefore, we remand for the district court to ascertain the amount of prejudgment interest due on the disability and disfigurement award and on the future damages awards.

## IV.

■ Frumkin also argues that the district court erred in reducing his award by the amount of social security disability benefits he had received due to his eye injury. Under Minn.Stat. § 548.36 subd. 1 (1990), Frumkin's damages were to be reduced by payments from "collateral sources," which are defined as:

> "[P]ayments related to the injury or disability in question made to the plaintiff ... by or pursuant to:
>
> (1) a federal, state or local income disability or workers' compensation act; or other public program providing medical expenses, disability payments, or similar benefits;
>
> (2) health, accident and sickness, or automobile accident and sickness, or automobile accident insurance or liability insurance that provides health benefits or income disability coverage; *except* life insurance benefits available to the plaintiff, whether purchased by the plaintiff or provided by others, *payments made pursuant to the United States Social Security Act,* or pension payments;
> ...."

Section 548.36 subd. 1 (emphasis added).

The district court deducted Frumkin's social security benefits from the award. Order of Oct. 10, 1990, at 5. Frumkin argues that the order violates the plain language of Minn.Stat. § 548.36. We conclude this argument is persuasive.

Mayo contends that the statute read as a whole shows that the exclusion of social security benefits is meant to exclude only social security *retirement* benefits, not social security *disability* benefits. If the

Minnesota legislature had meant to say that, it would have said so. None of Mayo's arguments regarding sentence structure and context persuasively gives that restricted meaning to the words "payments made pursuant to the United States Social Security Act." Mayo supports its argument with comments made by a Minnesota legislator in a hearing on the collateral source statute. However, the unambiguous language of the statute excludes social security benefits from the definition of "collateral source," and, absent exceptional circumstances, we are not at liberty to change that clear language by consulting legislative history. *See In re Erickson Partnership,* 856 F.2d 1068, 1070 (8th Cir.1988). Finally, Mayo relies on *Bartosch v. Lewison,* 413 N.W.2d 530 (Minn.Ct.App.1987), but the question of how to characterize social security disability payments was not at issue in *Bartosch,* and *Bartosch* contains no holding to support Mayo's argument.

## V.

We affirm the district court's denial of Mayo's motion to dismiss. We reverse the portion of the court's order granting a new trial on embarrassment and emotional distress, and pain, disability and disfigurement, and direct the court to reinstate the first jury's awards on these items of damage. We affirm the new trial order and the award of damages on retrial of past and future lost earnings and medical expenses. We also reverse the district court's decisions to deny prejudgment interest on the disability and disfigurement award and on future damages, and to reduce Frumkin's award by the amount of his social security benefits. We direct the district court to enter judgment in accordance with these holdings and to conduct any further proceedings it deems appropriate in that respect.