# CLYDE L. HEISE v. THE J. R. CLARK COMPANY AND OTHERS.[1]

July 1, 1955.

No. 36,274.

---

[1]Reported in 71 N. W. (2d) 818.

S. S. *Larson, J. Frank Boyles,* and *Byron Getzoff,* for appellant.
*William H. DeParcq* and *Chester D. Johnson,* for respondent.

NELSON, JUSTICE.

Suit was commenced herein against The J. R. Clark Company, a corporation, Billman's, Inc., a corporation, and Richard L. and Virginia Schreyer, as defendants, to recover for injuries plaintiff sustained due to the collapse of a stepladder while in use by plaintiff on the Schreyers' premises.

The case was tried before a jury, and all the defendants moved for directed verdicts at the close of the plaintiff's testimony. The motions were granted as to defendants Billman's, Inc., and the Schreyers. The J. R. Clark Company again moved for a directed verdict at the close of all the testimony, its motion was denied, and the jury returned a verdict against said company for $6,000. Thereafter this defendant moved the court for judgment notwithstanding the verdict but did not move in the alternative for a new trial. The motion was denied and judgment entered. The appeal is from the judgment.

Defendants Schreyer operated an oil station with the customary garage attachment at 2959 Central avenue northeast in the city of Minneapolis. The plaintiff, Clyde L. Heise, was at the time of the accident in the employ of the Standard Unit Parts Company as a salesman. He sold units and parts to the Schreyers, having made weekly calls at their station for a period of at least two years prior to the time the accident occurred. It had been plaintiff's practice when making his calls at the Schreyer station to make his own inspection of supplies on hand and by so doing determine the items to be placed on order. Fan belts constituted one of the items supplied by his company. About a month before the accident the fan belt rack in the Schreyer station was moved to the east wall of the garage section and placed several feet higher off the ground than formerly. The rack was set up in three sections, each three feet in length con-

taining eight hooks. Fan belts of 24 different sizes were hung on these racks about three feet from the ceiling and nine and a half feet upward from the floor. There was a number above each hook designating the type and size. After the location of the rack was changed, plaintiff in order to make the regular check of the fan belts had to do so by means of a stepladder and used the one commonly in use by the owner and employees about the garage. He would set the stepladder back approximately three feet from the wall and move it along while in the process of making this inspection. It was necessary for him to change the position in that manner about three times. He would mount the top step of the ladder and from that point read the numbers while standing on the top step. He found it necessary at times to turn his body somewhat in order to read the numbers and count and move some of the fan belts. He was proceeding in this manner on the day of the accident.

The J. R. Clark Company is a manufacturer of stepladders and the ✓ alleged manufacturer of the stepladder involved in this lawsuit. There was testimony that the stepladder in use at the time was manufactured by the Clark company and retailed by Billman's, Inc., dealing in hardware and stepladders, to the Schreyers and that it was put to general use about the garage in handling parts and in washing cars. The ladder had been purchased from seven to nine months before the occurrence of the accident. It had been used daily, and since the rack change-over it had been used several times each day for the purpose of reaching and taking down fan belts, cans of oil, and other items. When used in washing cars, it got wet. This process was regular. It went through a wetting and drying process whenever cars were washed in the garage. Donald Bumgarner was an employee at the Schreyer station, and he used it more than others. His weight was 215 pounds—more than that of the plaintiff. Testimony was submitted at the trial, which was not contradicted, that the stepladder had not developed any visible cracks and that it was not wobbly when last observed before the accident.

On the day of the accident plaintiff arrived at the gas station while Bumgarner was in the process of washing a car. Bumgarner

had used the stepladder on the wash job. He was in the process of drying the car. The only two persons in the station at the time were plaintiff and the station employee, Bumgarner. Plaintiff, while on his regular call that day, put the stepladder into use for the purpose of inspecting the fan belt rack. In examining one of the sections, he stood on the top step of the ladder. During this inspection process the ladder suddenly collapsed. It "did the splits" according to the plaintiff's testimony.

Bumgarner testified that he momentarily saw plaintiff standing on the top step of the ladder shortly before the accident. He was busy drying the car and did not look again until he heard the noise from the collapsing of the ladder. He said that he looked immediately and that the first thing he saw was the plaintiff standing upright on the top step of the stepladder which was then resting on the garage floor. The testimony of the plaintiff and Bumgarner was to the effect that the legs had spread the ladder from an A shape to an I shape and that it came to rest in that fashion on the garage floor, the plaintiff going straight down with the top step some four feet and standing on it when it hit the floor sustaining the injuries complained of. This testimony describing the manner in which the accident occurred was not directly contradicted.

There was no direct testimony showing carelessness on the part of the plaintiff in the use of the stepladder. Testimony was permitted on the part of the defense to indicate that the use of the top step in the manner plaintiff did use it was somewhat precarious and that the general situation created by plaintiff's use of the ladder as testified to by him and the other witness present could lead to the inference that the accident might well have happened through plaintiff losing his balance thus causing him to step on the pail shelf of the ladder and thereby precipitating what occurred. The ladder was examined in collapsed condition on the floor by the plaintiff and the witness Bumgarner. The rivets had pulled all the way through the wood on the shelf leg spreader. The small metal braces were hanging on the front legs of the ladder but had pulled straight through the wood spreader with the grain. Later it was taken outside, placed

beside some rubbish, and thereafter hauled away. It was not in evidence at the trial, but three stepladders of similar make and design designated as "special" were permitted for illustrative purposes only.

Resolving all conflicts in the evidence in favor of the prevailing party below, other facts appear to be as follows: Plaintiff and the witness Bumgarner identified the ladder which collapsed causing plaintiff's injuries as one manufactured by the defendant Clark company and testified that its name was thereon; that it was of the type or brand known as "special"; and that in this respect it was identical to those in evidence except for a possible variation in height. The testimony is in conflict as to whether the ladder which collapsed was four or five feet in height. The pail shelf legs also constituted the spreader or locking device on this particular ladder. Small metal strips were attached to the wood spreader by rivets. The spreader or locking device on plaintiff's Exhibits B and C and defendants' Exhibit 1 were, as to wood parts, all of ponderosa pine, according to the testimony of the superintendent of the Clark company. He so testified upon visual inspection of the three particular ladders. No other stepladders of the type involved in the accident were introduced as exhibits. It appears that the three had been selected at random and that any others received were of an entirely different design so far as spreaders were concerned.

There was testimony by the Clark company superintendent that, in manufacturing the particular type of stepladder known as "special," the company usually used ponderosa pine for the wood construction in the shelf legs and spreader and that the majority of the "special" brand ladders were manufactured utilizing ponderosa pine for the spreaders. It stands generally admitted throughout the testimony that ponderosa pine was the weakest of the woods described as permitted woods in the manufacture of these ladders and that ponderosa pine when used in the shelf legs and spreader or locking device would not hold as well as other available types of wood at comparable prices. There was also testimony that it was weakest when subjected to water and going through the process of getting wet and dry from time to time. There is testimony which

would indicate that the spreader or locking device, constructed to prevent collapse, used on the "special" stepladder of the type involved in the accident was composed of the wooden leg of the pail shelf, hinged with a rivet to a small metal strip near the end of the leg. This strip was in turn hinged to the front stile by means of a rivet, while the leg of the pail shelf was in turn hinged to the rear stile of the ladder. The spreader or locking device therefore on the ladder involved in the accident was of wood rather than metal and strain whenever applied would be with the grain of the wood rather than against it.

The American Standard Safety Code for Portable Wood Ladders provides as follows:

"A *metal* spreader or locking device of sufficient size and strength to securely hold the front and back sections in open position *shall* be a component of each step ladder. The spreader shall have all sharp points covered or removed to protect the user." (Italics supplied.) § 4.2.1.6, p. 11.

This is a mandatory rule of the Safety Code as defined by § 1.5 which reads:

"**Mandatory and Advisory Rules.** Mandatory rules of this code are characterized by the word 'shall.' If a rule is of an advisory nature it is indicated by the word 'should' or is stated as a recommendation."

There was conflict in the testimony as to whether or not the words "A *metal* spreader or locking device" meant the mandatory requirement of an all-metal spreader. Mr. John, superintendent of the Clark company, agreed that the wood "spreader" and "locking device" were synonymous and that the Safety Code does not permit or recommend a wood spreader or locking device such as was used on the stepladder. In effect, there was to that extent an admission that the express terms of the Safety Code require an all-metal spreader.

The testimony of the plaintiff was that just prior to the accident, while he was standing on the top step of the ladder, he heard a cracking and splitting of wood and that instantly the ladder started

to collapse and he to fall with it; that it was a sharp cracking of wood which gave plaintiff no warning; that as a result he was precipitated straight down to the floor, his feet still on the top step of the ladder; and that as the ladder lay spread out on the floor it appeared upon examination that the rivets had pulled all the way through the wood on the shelf leg spreader leaving the small metal strips hanging on the front legs of the ladder after having pulled straight through the wood spreader with the grain. Plaintiff stated definitely that he did not lose his balance or slip from the top step to the pail shelf but came to the floor standing upright on the top step. It appears from the testimony that the legs of the pail shelf of the type of ladder involved in the accident not only form the support for the pail shelf itself, as in ordinary stepladders, but that these legs also constitute the spreader or locking device of the particular ladder in question as contrasted to separate spreaders or locking devices found in stepladders. Admittedly the expert testimony made the use of ponderosa pine appear the least desirable wood for the construction of spreaders or locking devices when compared with other designated and available types of wood.

Plaintiff claims that the Clark company was negligent in designing and constructing the ladder as it did, in failing to use an all-metal spreader or locking device, and in using ponderosa pine in the shelf legs as it did; that it was negligence to use ponderosa pine or wood of any type in the spreader or locking device of the stepladder and that the American Standard Safety Code had been violated in that respect; that the use of ponderosa pine alone as it was used was negligence because of the well-known weakness of that type of wood; and using the type of wood it did there was negligence in design by setting the rivets too short a distance from the end of the shelf leg spreaders and by setting the rivets in the wood at an angle thereby throwing extra strain on the wood.

The Clark company claims that the verdict of the jury has no support in the record and rests upon mere possibility, speculation, and conjecture and therefore cannot be permitted to stand; that the plaintiff has attempted to set up a standard of care of its own and ignores the established standard of the industry whereby it had for

years manufactured the "special" brand stepladders in question; and that it is not an insurer of its product. They further advance the contention that the ladder in question was a simple tool; that the plaintiff was guilty of contributory negligence as a matter of law by using the top step of the ladder in the manner he did; and that it is entitled to a reversal of the order denying its motion for judgment notwithstanding the verdict and the entry of an order in its favor vacating and setting aside the judgment entered in favor of the plaintiff.

■ This is a case where, if the Clark company is liable, its liability must find support upon the ground that the circumstances under which the ladder was manufactured and delivered were such that the neglect to disclose the essence of the defect was a wrong—a neglect of a duty recognized by law independent of contract—, the Clark company being liable for injuries caused by its negligence in that respect to one into whose hands the defective article came for use in the usual course of business even though there was no contract between it and the plaintiff. In that respect we believe that this case comes within the rule laid down in Schubert v. J. R. Clark Co. 49 Minn. 331, 51 N. W. 1103, 15 L. R. A. 818.[2]

The Clark company contends that the ladder in question constitutes a simple tool and that no legal duty rests upon anybody since the dangers were obvious to any person of ordinary intelligence; that there is no basis upon which actionable negligence can be predicated, the plaintiff assuming the risk of the danger of standing on the top of the ladder as he did at the time it collapsed. To support that contention the Clark company cites Mozey v. Erickson, 182 Minn. 419, 234 N. W. 687; Person v. Okes, 224 Minn. 541, 29 N. W. (2d) 360; Dessecker v. Phoenix Mills Co. 98 Minn. 439, 108 N. W. 516; Hetager v. Moran, 168 Minn. 491, 210 N. W. 390, 864.

The stepladder involved in the Mozey case had no brace or con-

[2]O'Brien v. American Bridge Co. 110 Minn. 364, 125 N. W. 1012, 32 L.R.A.(N.S.) 980; Krahn v. J. L. Owens Co. 125 Minn. 33, 145 N. W. 626, 51 L.R.A.(N.S.) 650; Huset v. J. I. Case Threshing Mach. Co. (8 Cir.) 120 F. 865, 61 L. R. A. 303; Central Steel Tube Co. v. Herzog (8 Cir.) 203 F. (2d) 544.

tact between the two legs of the ladder to keep them from coming together or to keep them from spreading apart. The record in that case is indefinite as to whether the stepladder had the usual equipment to keep the two legs from unduly sliding forward. It had two swinging free legs. The situation did not involve latent defects, and the absence of the usual braces and supports was obvious. While the ordinary stepladder of that character comes within the simple-tool doctrine relieving the employer who furnishes it from any duty of inspection, the facts in that case are distinguishable from the situation presented in the instant case where we have a stepladder built by the manufacturer marked "special" and controlled in its manufacture and output by a mandatory requirement of the Code that the metal spreader or locking device be of a specified design. The applicable rule, however, is that the simple-tool doctrine has no application where the master either has or ought to have knowledge of a defect in a tool and the servant or the user does not, and the defect is of a character not obvious from observation ordinarily accompanying its use. Person v. Okes, *supra.*

Here we have the question of whether there was negligence in construction in the use of the wood ponderosa pine, upon which liability might be predicated, in connection with a spreader or locking device and shelf legs as manufactured and put upon the market by the Clark company; whether there was negligence upon which liability could be predicated in the failure to use a complete metal spreader or locking device if the Code so required, which appears to stand admitted in the record; whether or not the rivets were attached to the shelf legs for spreader purposes the short distance of only three inches from the one-quarter inch thick end of the wooden shelf leg, too short a distance to develop proper strength of the wood shelf leg in its use in the spreader or locking device; and whether the rivet itself was set in the wood of the shelf leg at an angle so as to cause an undue strain on the weakest part of the spreader. The Clark company's superintendent stated that ponderosa pine was used in the three "special" ladders admitted as exhibits for illustrative purposes and that ponderosa pine was used

mostly and in the majority of like stepladders manufactured by it.

The Clark company made the election to use a spreader with short metal strips, the leg attachments being of ponderosa pine instead of a full and complete metal spreader as required by the Safety Code in the ladder manufacturing business. The jury could determine that it was obvious from the evidence as a whole that the reason for the Code's requiring a metal spreader or locking device was to insure the extra strength of metal as compared with the ponderosa pine used or wood of any type if used; and that if in such a vital spot the defendant company chose to use wood and the weakest wood available of those considered by the Code, then, if its design was faulty and might become dangerous to the user, the consequences ought not to be borne by the plaintiff but by the Clark company as manufacturer.

While the Clark company contends that the testimony might well give rise to an inference that plaintiff lost his balance and stepped down on the pail shelf, the testimony of the plaintiff and the witness Bumgarner stands undisputed and uncontradicted that the accident did not occur in that way. Under the circumstances, even though the practice of standing upon the top step of the ladder might have been hazardous because of the danger of losing one's balance, since it can be found from the evidence that this did not occur, it could not be the proximate cause of the accident. The testimony is that the plaintiff did not lose his balance—did not step on the pail shelf—and the testimony of both witnesses is that the plaintiff was standing on the top shelf flat on the floor when the collapse was over. The jury passed upon that issue and did not find plaintiff contributorily negligent in that or any other respect. The Clark company contends that the plaintiff was, in the manner in which he used the ladder, contributorily negligent as a matter of law. We are unable to agree and must hold that contributory negligence here under all the circumstances was for the jury. The rule is well established and hardly needs citation that—

"* * * It is only in the clearest of cases when the facts are undisputed and it is plain that all reasonable men can draw but one con-

clusion, that the question of contributory negligence becomes one of law." Mechler v. McMahon, 180 Minn. 252, 254, 230 N. W. 776, 777.

■ It is our view that the record in the case at bar presents more than a single ground of negligence on which liability may be predicated by the jury without resting the verdict on speculation, conjecture, or mere possibility. There was no motion to withdraw on any issue nor any objection to the charge submitting more than one. In the situation presented here it is immaterial whether there is enough to go to the jury on each issue submitted, for if on either issue, where more than one, the evidence sustains a verdict there must be an affirmance. Hetager v. Moran, 168 Minn. 491, 210 N. W. 390, 864.

The Clark company contends that there is no evidence upon which to base a finding that ponderosa pine was used for the reason that no witness testified that such was the case and cites Nicholas v. Hennepin Wheel Goods Co. 239 Minn. 269, 58 N. W. (2d) 572, where this court unequivocally stated that a verdict resting upon mere possibility, speculation, and conjecture cannot stand. We have already referred to the three stepladders of the same type received as exhibits which all contained ponderosa as part of the spreader device and the statement by the superintendent of the Clark company that in those stepladders they usually used ponderosa pine in the spreaders; that the majority in the special type were of ponderosa pine. The Clark company requested the court to include in its charge to the jury, and it did, the following statement:

"* * * If you should find that the Clark Company was at fault in the kind of wood that was used, you must find that such wood used in the construction of the shelf leg was Ponderosa Pine."

It is only where the inference relied upon finds no support in the evidence or where it is clear from all the evidence that an undeniable preponderance thereof is against the inference drawn that there is a lack of evidentiary support. Can it be said that a finding here based on circumstantial evidence lacks evidentiary support or that the circumstances are clearly lacking in probative weight and value? While it is essential in a civil case that a preponderance of circum-

stantial evidence support an inference upon which a finding of negligence is based, this does not mean that such a finding should be set aside because another inference could be drawn from the same facts. Westling v. Holm, 239 Minn. 191, 58 N. W. (2d) 252.[3]

The trial court refused to direct a verdict in favor of the Clark company and submitted the case to the jury on the theory of negligence and left it to the jury to determine whether the Clark company was negligent and whether the plaintiff was contributorily negligent. The Clark company moved for judgment notwithstanding the verdict and such motion was denied. Under the circumstances, the only questions involved on this appeal from the judgment (there being no motion for a new trial) are whether the jury's determination that the Clark company was guilty of negligence and that such negligence was a proximate cause of plaintiff's injuries finds support in the evidence and whether the plaintiff was under the evidence guilty of contributory negligence as a matter of law. While plaintiff raises the question as to whether or not the instruction requested, heretofore referred to (as to fault in the kind of wood that was used), was proper under the charge as given generally, it is not before us for consideration on the appeal as taken. The instructions of the court are unchallenged. The Clark company did not object to the instruction given at the time but requested it and thereafter made no motion for a new trial because of any error in the instructions. Rule 51 of Rules of Civil Procedure provides:

"* * * No party may assign as error * * * omissions in the charge, unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objections."

It further provides:

"* * * An error in the instructions with respect to fundamental law or controlling principles may be assigned in a motion for a new

[3]Lillstrom v. N. P. R. Co. 53 Minn. 464, 55 N. W. 624, 20 L. R. A. 587; Hedin v. Northwestern Knitting Co. 127 Minn. 369, 149 N. W. 541; Sears, Roebuck & Co. v. Peterson (8 Cir.) 76 F. (2d) 243; 7 Dunnell, Dig. (3 ed.) § 3234, and 13 Id. § 7047, and cases cited therein.

trial though it was not otherwise called to the attention of the court."

A party is concluded by an instruction given at his own request. The Clark company did not object to the instruction given. Under such circumstances the trial court's charge, even though it be erroneous, becomes the law of the case and whether the verdict is sustained by the evidence is then determined by application of the rules of the law laid down in the charge. 6 Dunnell, Dig. & Supp. §§ 9792, 9793, and cases cited.[4]

■ A new trial was not sought. There was a motion for judgment notwithstanding the verdict which was denied. Judgment was thereafter entered from which the Clark company appeals. We are under the circumstances limited to a consideration, only, of the sufficiency of the evidence to sustain the verdict of the jury. Matters involving trial procedure, evidentiary rulings, objections to instructions, and the like are subject to review only providing there has been a motion for a new trial in which such matters are assigned as error. Johnson v. Mancilman, 241 Minn. 461, 63 N. W. (2d) 569; Smith v. Otto Hendrickson Post 212, American Legion, 241 Minn. 46, 62 N. W. (2d) 354; Phelan v. Carey, 222 Minn. 1, 23 N. W. (2d) 10; Fidelity & Cas. Co. v. Minneapolis Brg. Co. 214 Minn. 436, 8 N. W. (2d) 471; Ciresi v. Globe & Rutgers F. Ins. Co. 187 Minn. 145, 244 N. W. 688; Hagen v. Bowers, 182 Minn. 136, 233 N. W. 822; Smith v. Gray Motor Co. 169 Minn. 45, 210 N. W. 618; see, Olson v. Mullen, 244 Minn. 31, 68 N. W. (2d) 640. Having come to the conclusion that there is evidence in the instant case to support the verdict, we accordingly affirm without passing upon the other assignments of error.

Affirmed.

---

[4]Bullock v. New York L. Ins. Co. 182 Minn. 192, 233 N. W. 858; Farnham v. Pepper, 193 Minn. 222, 258 N. W. 293; Fidelity & Cas. Co. v. Minneapolis Brg. Co. 214 Minn. 436, 8 N. W. (2d) 471; Kane v. Locke, 218 Minn. 486, 16 N. W. (2d) 545, affirming 216 Minn. 170, 12 N. W. (2d) 495; Christenson v. Village of Hibbing, 219 Minn. 141, 16 N. W. (2d) 881; Mattfeld v. Nester, 226 Minn. 106, 32 N. W. (2d) 291, 3 A. L. R. (2d) 909; Ellingboe v. Guerin, 228 Minn. 211, 36 N. W. (2d) 598; Rogge v. G. N. Ry. Co. 233 Minn. 255, 264, 47 N. W. (2d) 475, 481; 1 Dunnell, Dig. (3 ed.) § 404.