Jeff MOEN, Respondent,

v.

SUNSTONE HOTEL PROPERTIES, INC., a Colorado corporation d/b/a Marriott Hotel, Appellant.

No. A11–1093.

Court of Appeals of Minnesota.

July 23, 2012.

Mark G. Stephenson, Geraldine M. Sutcliffe, Stephenson & Sutcliffe, P.A., Rochester, MN, for respondent.

Mark Mathison, Dean LeDoux, Gray Plant Mooty Mooty & Bennett, Minneapolis, MN; and Michael J. Lorenger (pro hac vice), Lorenger & Carroll, PLC, Alexandria, VA, for appellant.

Considered and decided by ROSS, Presiding Judge; WRIGHT, Judge; and COLLINS, Judge.

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by

## OPINION

COLLINS, Judge.*

Respondent-employee brought this action claiming that his termination violated the collective-bargaining agreement (CBA) governing his employment relationship with appellant-employer, and appellant defamed him by falsely stating that he brought a gun to a meeting. Appellant argues that (1) respondent's wrongful-discharge claim is interpreted under federal labor law and must be arbitrated pursuant to the arbitration clause of the CBA, and (2) the district court erred in denying appellant's motion for a new trial on the defamation claim because (a) the untimeliness of the motion hearing did not preclude review, (b) the special-verdict form set forth a different version of the alleged defamatory statement than the one appellant proposed, and (c) the court failed to properly instruct the jury on previously determined issues of law. We affirm in part, reverse in part, and remand.

## FACTS

Respondent Jeff Moen worked as a bellman at the Marriott Hotel in Rochester. He was employed by appellant Sunstone Hotel Properties, Inc, d/b/a Marriott Hotel and was a member of Unite Here Local 21, a hospitality and healthcare union. Moen's employment relationship with Sunstone was governed by the CBA between Sunstone and the union.

The most relevant portions of the CBA are articles five and six, concerning discharge and the grievance and arbitration process. Article five states that "[n]o employee will be disciplined or discharged without just cause," and gives employees the right to have a union representative in a meeting regarding discipline. Article six

appointment pursuant to Minn. Const. art. VI, § 10.

sets forth various optional and mandatory processes to be used to settle "all questions arising under the terms of this agreement or the application of them." Article six further states that if the dispute does come before an arbitrator pursuant to the CBA, the decision of the arbitrator "shall be final and binding on the parties and employees involved."

On October 16, 2007, Moen parked in a hotel parking ramp and was seen leaving the ramp without paying, in violation of Sunstone's company policy. Moen was suspended for "theft of company property, goods or services." A meeting to determine whether Moen should be terminated for this conduct was scheduled for October 24. On that day, after having lunch with his friend Greg Hoff and others, Moen went to the union offices and met with his union representatives, Brian Brandt and Dave Blanchard. Moen, Brandt, and Blanchard then met with Tom McKenney, the Marriott's general manager, and Bruce Fairchild, a higher level Sunstone manager, regarding the parking incident and Moen's employment. During the meeting, Moen apologized for the incident and "begged" for his job. The meeting ended with Fairchild telling Moen that he could keep his job if he did not park in the ramp again.

Moen returned to work on October 25, and he then had a long weekend off. When Moen arrived at the hotel to work October 29, he was met by Rochester Police Officers who escorted him to Fairchild and McKenney. Moen was fired, and Fairchild read the following report of disciplinary action to him:

> [Moen] informed another associate that he had purchased and brought a gun to his meeting with Bruce Fairchild, Tom McKenney of Sunstone Hotels and Dave Blanchard and Brian Brandt of Local 21. He told the associate he was prepared to take everyone out including himself if it

did not go his way. In addition, he informed 2 associates that it was [too] bad Steve Woslager was not present as he would have taken care of him also.

The report was signed by McKenney.

The report was the product of an investigation conducted by McKenney between October 25 and October 29. Robert Marek, another bellman, informed McKenney that on October 25, he had a conversation with Moen about a .357 handgun. According to Marek, Moen "said that he brought backup to the meeting." Marek understood what was said to mean that Moen had brought a gun to the October 24 meeting. Marek initially thought that Moen was joking, but when he later patted on Moen's jacket to see if the gun was in there, Moen stated that the gun was in his car and asked if Marek wanted to see it. According to Marek, Moen told Matt Hennessey, a hotel doorman, that he had bought a handgun from Hoff's neighbor. Marek also stated that Moen discussed the handgun with Hoff when Hoff stopped at the hotel on October 25, and Marek "believed that [Moen] said something about Steve [Woslager, another bellman], 'I wish Steve was there at the meeting, he could have taken care of business.'"

Marek testified that he reported these conversations to a hotel manager and called Moen to tell him to get rid of the gun. Marek testified that he told Hennessey about these conversations, and he believed that Hennessey told Woslager, and that Woslager told McKenney. Marek later talked to his wife, the police, others at the hotel, and McKenney about the matter. McKenney interviewed Marek on October 27, and produced a written summary of the interview. However, Marek testified that McKenney rewrote Marek's statement in McKenney's own words; Marek agreed that he had said some of what was attributed to him, but not all. Woslager and

Hennessey similarly qualified the statements McKenney produced regarding his conversations with each of them.

Moen denied making any such statements to anyone, denied purchasing a gun in relation to the meeting, and denied bringing a gun to the meeting. According to Moen, when he arrived at work on October 25, he and Marek briefly discussed the fact that Moen was working again, but the two did not talk much the rest of the day. Moen also testified that he briefly said hello to Hennessey when he started work that afternoon, he did not speak to Woslager at all that day, and he saw McKenney walk through the lobby but the two did not speak to each other. Moen testified that at about 1:00 p.m., his friend Hoff drove into the drive-through area in front of the hotel to say hello and let Moen know about a parking ticket on his truck. Hoff gave similar testimony. After work that day, Moen left Rochester for a weekend hunting trip. Moen received a call from Marek later that afternoon, but he could not understand what Marek was saying because of poor cellphone reception. Moen testified that he did not receive any other communication from Sunstone or his co-workers until he returned to work on October 29.

Moen disputed the veracity of Marek's statement as reported by McKenney. According to Moen's testimony, some elements of the report are true but are misleading when put together, and other elements are entirely false. For example, Moen testified that he had purchased a handgun, but that Marek incorrectly stated the purchase price and date of purchase. Moen denied that he and Marek talked about a gun on October 25 and denied that any of the conversation noted

in the Marek and Hennessey reports occurred as described. Hoff also denied that he had ever seen any of Moen's guns, and denied that Moen mentioned anything about the October 24 meeting when he and Moen spoke on October 25.

Moen commenced this action in January 2008, alleging that his employment had been terminated without the just cause required in the CBA for termination, and that Sunstone defamed him in the course of the investigation and his termination. In April 2009, Sunstone moved for summary judgment, arguing that the wrongful-discharge claim was federally preempted [1] and that the allegedly defamatory statements were subject to qualified privilege. Following a hearing, the district court denied the motion. The case was tried in October 2010. The jury found that Moen was terminated without just cause, for which it awarded Moen damages of $157,326, and that Sunstone had defamed Moen and made the defamatory statement with actual malice, for which it awarded Moen past and future damages of $319,000. The district court adopted the jury's findings and ordered judgment in favor of Moen against Sunstone in the sum of $476,326.

Judgment was entered on October 29, 2010, and Moen served a notice of entry of judgment on November 2. On December 3, 2010, Sunstone filed a motion for a new trial. Sunstone scheduled the motion to be heard on February 2, 2011, at which time the assigned judge ruled he was not the proper judge to hear the motion and rescheduled the hearing before the trial judge. Following a hearing on March 30, 2011, the district court granted Moen's motion to strike Sunstone's motion for a

---

1. Sunstone does not argue on appeal that the defamation claim was similarly precluded. *Cf. Karnewie–Tuah v. Frazier,* 757 N.W.2d 714, 722–24 (Minn.App.2008) (holding that a defamation claim against the employer's representative was preempted by federal law because the statements were made in the course of a grievance procedure under a CBA).

new trial as untimely heard, and, alternatively, denied the motion on the merits. Sunstone now appeals the pretrial denial of summary judgment on the wrongful-discharge claim; the judgment that the district court entered based on the jury's verdict; and the order granting Moen's motion to strike the motion for a new trial and alternatively denying Sunstone's motion for a new trial.

## ISSUES

I.   Did the district court err in denying appellant's motion for summary judgment, allowing respondent's wrongful-discharge claim to proceed?

II.   Did the district court err in denying appellant's motion for a new trial on the defamation claim?

## ANALYSIS

**I.   Did the district court err in denying appellant's motion for summary judgment, allowing respondent's wrongful-discharge claim to proceed?**

On appeal from summary judgment, this court asks whether there are any genuine issues of material fact and whether the district court's application of the law was erroneous. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). Summary judgment is proper if, viewing the evidence in the light most favorable to the nonmoving party, there are no genuine issues of material fact and either party is entitled to a judgment as a matter of law. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993). The construction of a statute is a question of law, as is the construction of a contract, and we review both de novo. *Business Bank v. Hanson,* 769 N.W.2d 285, 288 (Minn.2009); *Olmanson v. LeSueur Cnty.,* 693 N.W.2d 876, 879 (Minn.2005).

■   Sunstone moved the district court for summary judgment on Moen's wrongful-discharge claim, arguing that this case must be interpreted according to federal law principles pursuant to section 301 of the Labor Management Relations Act (LMRA). LMRA § 301(a) states in relevant part:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a) (2006). "When resolution of a state law claim is substantially dependent upon analysis of the terms of a collective bargaining agreement made between the parties in a labor contract, that claim must either be treated as a claim under section 301 of the LMRA, or wholly dismissed as preempted by federal labor-contract law." *Karnewie–Tuah,* 757 N.W.2d at 720 (citing *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206 (1985)); *see also Brevik v. Kite Painting, Inc.,* 416 N.W.2d 714, 717 n. 2 (Minn.1987) ("State courts have concurrent jurisdiction over section 301 claims although a state court must apply substantive principles of federal labor law.").

■   On appeal, the parties agree that federal law applies, but dispute the effect the application of federal law has on the interpretation of the CBA in this case. Sunstone argues that the CBA indicates that arbitration of grievances under the CBA is final, exclusive and binding; and that even if there was a question about exclusivity, federal precedent provides a presumption in favor or arbitration. Moen argues that the CBA does not dictate arbitration as the exclusive method of

grievance resolution; and that federal precedent allows that judicial resolution is available in this case.

■ The parties agree that federal law dictates that an exclusive, final and binding arbitration procedure in a CBA precludes judicial resolution of disputes under the CBA, except in certain specific and inapplicable circumstances. *See Groves v. Ring Screw Works,* 498 U.S. 168, 173–74, 111 S.Ct. 498, 502, 112 L.Ed.2d 508 (1990) ("[A] presumption favoring access to a judicial forum is overcome whenever the parties have agreed upon a different method for the adjustment of their disputes."); *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652, 85 S.Ct. 614, 616–17, 13 L.Ed.2d 580 (1965) ("[F]ederal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress."); *Alford v. General Motors Corp.,* 926 F.2d 528, 531 (6th Cir.1991) ("[I]f a collective bargaining agreement contains exclusive and final procedures for the resolution of employee grievances, an employee will be prohibited from bringing an action under § 301 absent an allegation that his union breached its duty of fair representation."). The district court and the parties are in accord that the arbitration procedure is final and binding, because the CBA explicitly states as much. The remaining question is whether the CBA's grievance and arbitration procedure is exclusive of other remedies.

Sunstone argues that the arbitration clause of the CBA is clearly exclusive, whereas Moen argues that the district court correctly decided that the clause is not mandatory. Article six of the CBA is labeled "Grievance and Arbitration Procedure." Paragraph one of that article states that the grievance procedure at issue was "established for the specific purpose of providing prompt and amicable means of settlement of all questions arising under the terms of this agreement or the application of them." Paragraph two reads: "An employee may, with or without the assistance of a shop steward, first attempt to resolve workplace disputes with the employee's manager. If not resolved informally, the following shall be the grievance procedure." The procedure is expressed in steps. Step one of the procedure states that the Union Business Agent (UBA) "shall" reduce the grievance to writing, with requirements for the content of the written grievance, and "shall" deliver the grievance to the Human Resources Director (HRD). Step two states that the UBA and the HRD "shall meet" to "attempt to settle the grievance." Step three is designated "(Optional)," and indicates that the UBA "may appeal the grievance to mediation." The process for mediation, if the UBA chooses to undertake that step, is phrased in terms of what actions the UBA "shall" take and how the mediation process "shall" be performed. Step four states that "[i]f the grievance is not settled at Step 3, or if the Union Business Agent chooses to skip Step 3, the Union may submit the matter to arbitration." The CBA then describes the arbitration process, including all the actions that the union and Sunstone "shall" take.[2]

Article six of the CBA states the proposition that it is to govern "all questions arising under" the CBA. It then provides a number of avenues through which these questions may be resolved. Before the

---

**2.** The union chose not to pursue arbitration. Moen did not plead a claim of breach of duty of fair representation. *See Vaca v. Sipes,* 386 U.S. 171, 186–87, 87 S.Ct. 903, 914–15, 17 L.Ed.2d 842 (1967) (describing the basis of a hybrid claim alleging a wrongful discharge by the employer and a breach of duty of fair representation by the union for failing to fully pursue the wrongful discharge claim through the grievance process).

formal grievance process begins, the employee may attempt to resolve the grievance informally. If that fails, the grievance "shall" be presented to the company after which the UBA and the HRD "shall" meet. Should that fail, the UBA "may" use mediation to try to resolve the dispute in step three and "the Union may submit the matter to arbitration" under step four. The use of optional language indicates that the union and employer may select the various mechanisms for resolving the grievance and that the employee may choose not to pursue the grievance. In whole, article six does not indicate that the employee could pursue avenues outside the CBA in order to resolve a dispute under the CBA. Rather, this article sets forth steps towards resolution for the "specific purpose" of settling "all questions" under the CBA. Allowing Sunstone, the union, or employees to ignore the CBA's process for dealing with these claims would prevent the article from accomplishing its stated purpose.

■ Moen argues that there is a "presumption of access to the courts under § 301 of the LMRA," and that a CBA must explicitly preclude judicial action in order for the arbitration clause to be exclusive. This argument finds no support in federal law; rather the presumption is for courts to give effect to the selection of a dispute-resolution method where one has been selected in an applicable CBA. *Groves*, 498 U.S. at 175, 111 S.Ct. at 503 ("Unquestionably the means chosen by the parties for settlement of their differences under a collective bargaining agreement [must be] given full play." (quotation omitted)); LMRA § 203(d), 29 U.S.C. § 173(d) (2006) ("Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement."); *see also Livadas v. Bradshaw*, 512 U.S. 107, 122–23, 114 S.Ct. 2068, 2077–78, 129 L.Ed.2d 93 (1994) ("[S]tate contract law must yield to the developing federal common law … to assure that the purposes animating § 301 will [not] be frustrated … by parties' efforts to renege on their arbitration promises by 'relabeling' as tort suits actions simply alleging breaches of duties assumed in collective-bargaining agreements."). In fact, in interpreting a CBA with "language stating that an employee 'may discuss' a complaint with his foreman," the *Maddox* court held that the CBA did not "reveal a clear understanding between the contracting parties that individual employees … are free to avoid the contract procedure and its time limitations in favor of a judicial suit. Any doubts must be resolved against such an interpretation." 379 U.S. at 658–59, 85 S.Ct. at 619.

Because (1) the LMRA applies here, (2) the language of the CBA indicates that arbitration is the exclusive remedy for disputes, and (3) federal law favors enforcing this provision, we reverse the district court's denial of summary judgment for Sunstone on Moen's wrongful-discharge claim.

## II. Did the district court abuse its discretion in denying appellant's motion for a new trial on the defamation claim?

The district court denied Sunstone's motion for a new trial on two grounds. First, that the motion was not heard in compliance with the requirements of Minn. R. Civ. P. 59.03. Second, that Sunstone's assertions of error were without merit. This court reviews "the district court's decision to dismiss the motion for an abuse of discretion." *Rubey v. Vannett*, 714 N.W.2d 417, 424 (Minn.2006).

■ "A notice of motion for a new trial shall be served within 30 days after …

service of notice by a party of the filing of the decision or order." Minn. R. Civ. P. 59.03. Moen served notice of the entry of judgment on November 2, 2010, and Sunstone complied with rule 59.03 by filing its notice of motion and motion for a new trial on December 3. In addition to creating a filing deadline, rule 59.03 also states that "the motion shall be heard within 60 days after such general verdict or notice of filing, unless the time for hearing be extended by the court within the 60-day period for good cause shown." Sunstone initially noticed the hearing on the motion for February 2, 2011, and the motion was heard ultimately on March 30, 2011. It is clear that Sunstone did not comply with the timing requirement for the hearing in rule 59.03, and Sunstone does not argue that there are any mitigating circumstances shown. Thus, the district court did not abuse its discretion by striking the motion for a new trial as untimely heard.

■ That does not end our inquiry, however, because the parties dispute the effect of Sunstone's failure to comply with the 60-day hearing requirement on this court's review. Sunstone argues that its failure is meaningless, whereas Moen argues that this court can affirm the district court's decision on the new trial motion solely on the basis of the untimely hearing.

In *Rubey*, appellant's counsel timely filed a motion for new trial but failed to schedule a timely hearing date. 714 N.W.2d at 420–21. The district court concluded that it lacked jurisdiction to hear appellant's motion. *Id.* at 421. On appeal, this court affirmed on the ground that the late hearing divested the district court of jurisdiction and further held that the appeal was untimely because the motion for a new trial did not toll the time to appeal. *Id.* The supreme court subsequently determined that the failure to have the motion heard within the 60-day rule did not divest the district court of jurisdiction because

the timing provision was procedural, not jurisdictional. *Id.* at 422. The supreme court held that the district court's decision to dismiss the motion was not an abuse of discretion because the motion did not have a timely hearing. *Id.* at 424. But because appellant's motion was timely served and filed, the supreme court held that the underlying judgment was nonetheless appealable to this court. *Id.* at 425; *see* Minn. R. Civ.App. P. 104.01, subd. 2 ("[I]f any party serves and files a proper and timely motion ... the time for appeal of the order or judgment that is the subject of such motion runs for all parties from the service by any party of notice of filing of the order disposing of the last such motion outstanding."). As a result of its holding, the supreme court in *Rubey* remanded to this court "for review of the underlying judgment on appeal as though no new trial/amended findings motion had been made and review to determine 'whether the evidence sustains the findings of fact and whether such findings sustain the conclusions of law and the judgment.'" 714 N.W.2d at 425 (quoting *Gruenhagen v. Larson*, 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976)).

■■ When no motion for a new trial has been made, this court's review of the underlying judgment is limited to "substantive questions of law." *Alpha Real Estate Co. of Rochester v. Delta Dental Plan of MN.*, 664 N.W.2d 303, 311 (Minn. 2003). This rule precludes consideration of "issues arising during the course of trial," meaning "trial procedure, evidentiary rulings and jury instruction." *Id.* at 310 (citing *Sauter v. Wasemiller*, 389 N.W.2d 200, 202 (Minn.1986) and *Tyroll v. Private Label Chems., Inc.*, 505 N.W.2d 54, 56 (Minn.1993)). This is because the district court's decisions on trial procedure are entitled to deference, and a motion for a new trial "gives the court time to consid-

er the context of the objection and the effect the error may have had on the outcome of the case." *Id.* at 310–11. An appellate court can still consider "substantive questions of law" that are raised and fully briefed during the trial. *Id.* These substantive questions include "whether the evidence sustains the findings of fact and whether such findings sustain the conclusions of law and the judgment." *Gruenhagen*, 310 Minn. at 458, 246 N.W.2d at 569. However, courts should be wary of appellants seeking to "ingeniously convert[ ] a procedural issue into a question of law." *Alpha Real Estate Co.*, 664 N.W.2d at 311; *see also Tyroll*, 505 N.W.2d at 57 ("With a little ingenuity, most questions can be converted into so-called 'questions of law.'").

With this procedural rule in mind, we address Sunstone's assertions of error. Sunstone argues that the district court erred in two ways. First, Sunstone argues that the special-verdict form submitted to the jury misstated the allegedly defamatory statement, thereby precluding the jury's decision as to whether or not the statement was actually made. Second, Sunstone argues that the district court erred in not instructing the jury that one of the grounds for finding actual malice for a defamatory statement made with qualified privilege was not in play. Both arguments raise issues of "trial procedure, evidentiary rulings and jury instruction." *See Sauter*, 389 N.W.2d at 201–02 (reiterating the *Gruenhagen* rule in declining to review error assigned to jury instructions); *Radel v. Minn. Holstein Friesian Breeders Ass'n, Inc.*, C8–97–2202, 1998 WL 436908, at *3 (Minn.App. Aug. 4, 1998) (refusing to consider an argument regarding error on the special verdict form because of the *Gruenhagen* rule), *review denied* (Minn. Sept. 30, 1998). Further, both of Sunstone's assertions of error address issues on which the district court's decision is subject to considerable deference. *See Russell v. Johnson*, 608 N.W.2d 895, 898

(Minn.App.2000) ("District courts are allowed considerable latitude in determining jury instructions."), *review denied* (Minn. June 27, 2000); *Dang v. St. Paul Ramsey Med. Ctr.*, 490 N.W.2d 653, 658 (Minn.App. 1992) ("The trial court has broad discretion both in writing jury instructions and in framing special verdict questions."), *review denied* (Minn. Dec. 15, 1992). District court decisions on issues that arise during trial are subject to deference from this court and fall on the unreviewable side of the "'general demarcation line.'" *Continental Retail, LLC v. Cnty. of Hennepin*, 801 N.W.2d 395, 399 (Minn.2011) (quoting *Alpha Real Estate Co.*, 664 N.W.2d at 310–11). As a result, our consideration of these allegations of error is precluded by the rule expressed in *Gruenhagen* and *Sauter*. And while Sunstone styles its assertions as errors of law, we heed the warning to be wary of ingenious conversion of procedural issues into questions of law. *Alpha Real Estate Co.*, 664 N.W.2d at 311.

Sunstone failed to have a timely hearing on its motion for a new trial. We conclude that this failure is not meaningless, but instead limits the scope of our review on appeal because of *Rubey* and the *Gruenhagen* line of cases. Seeing no substantive issues of law in Sunstone's assertions of error, we affirm the district court's dismissal of the motion for a new trial because the motion was not timely heard.

## DECISION

The district court erred as a matter of law by denying Sunstone's motion for summary judgment on the issue of whether the CBA, as interpreted under federal law, precluded Moen's wrongful-discharge claim. The CBA's arbitration clause is the exclusive remedy for Moen's grievance against Sunstone. We reverse and re-

mand for entry of judgment not to include damages for wrongful discharge.

The district court did not err in dismissing Sunstone's motion for a new trial because it was untimely heard. The district court has discretion to dismiss a motion for a new trial for failure to meet the requirement that a motion for a new trial be heard within 60 days in rule 59.03. When the district court does exercise that discretion, this court's review is limited to substantive questions of law. The assertions of error during the trial advanced by Sunstone are not substantive questions of law and we decline to review them.

**Affirmed in part, reversed in part, and remanded.**