*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0800**

Bobbie Teeple, et al.,
Appellants,

vs.

Estate of Dylan Cox, et al.,
Respondents.

**Filed May 18, 2015
Affirmed
Johnson, Judge**

Otter Tail County District Court
File No. 56-CV-12-2339

David O.N. Johnson, Meyer, Puklich, Merriam & Johnson, P.L.C., Eden Prairie, Minnesota (for appellants)

Paul R. Aamodt, Minneapolis, Minnesota (for respondents)

Considered and decided by Johnson, Presiding Judge; Halbrooks, Judge; and Stoneburner, Judge.[*]

**U N P U B L I S H E D   O P I N I O N**

**JOHNSON,** Judge

A teenage boy shot and killed his teenage girlfriend and then himself. Several of the girl's relatives brought this wrongful-death case against the boy's parents and the

---

[*]Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

boy's estate. An Otter Tail County jury found that the boy's parents are not responsible for the girl's death. The jury found that the boy's estate is responsible but did not award money damages. On appeal, the girl's relatives seek a new trial on the issue of damages. We affirm.

**FACTS**

On March 21, 2011, Dylan Cox shot and killed Tabitha Belmonte with a shotgun and then shot and killed himself. At the time, Cox and Belmonte were high-school students and teenage parents. They were living with their infant daughter and Cox's parents in a home owned by Cox's parents.

In August 2012, nine of Belmonte's relatives and Belmonte's estate commenced this wrongful-death action against Cox's estate and Cox's parents. The named plaintiffs include Belmonte's mother, Bobbi Teeple; Belmonte's half-brother, Nathaniel Grismer; and Belmonte's maternal grandfather, Theodore D. Bergeron.[1] The complaint alleged an intentional-tort claim against Cox's estate and a negligence claim against Cox's parents.

The case was tried to a jury on three days in January 2014. The jury returned a special-verdict form in which it found that Cox's possession of a shotgun did not create a

---

[1]The partial appellate record indicates that some of the remaining plaintiffs are not "next of kin" and, thus, may not assert a wrongful-death claim. "[F]or the purpose of the wrongful death statute, 'next of kin' means blood relatives who are members of the class from which beneficiaries are chosen under the intestacy statute." *Wynkoop v. Carpenter*, 574 N.W.2d 422, 427 (Minn. 1998). The term "next of kin" includes "a decedent's issue, parents and parents' issue," and "grandparents and descendants of grandparents." *Id.* (citing Minn. Stat. § 524.2-103 (1992 & 1996) (intestacy statute)). Steven Teeple, Sr., is married to Bobbi Teeple but did not adopt Belmonte. Laura E. Bunten is a daughter of Steven Teeple, Sr. Steven L. Teeple, Jr., presumably is a son of Steven Teeple, Sr. The record does not reveal the relationship between Belmonte and plaintiffs Tiffany Teeple, Theodore J. Bergeron, and Denise L. Niehaus.

foreseeable risk of injury to others, which defeated the negligence claim against Cox's parents. The jury also found that the shooting was not caused by mental illness or mental defect, which would make Cox's estate liable for any compensable injuries sustained by the plaintiffs. But when asked, "What sum of money will fairly and adequately compensate plaintiffs for pecuniary damages arising from the death of Tabitha Belmonte?," the jury answered, "$0." No party filed a post-trial motion. In March 2014, the district court administrator entered judgment in favor of the defendants and against the plaintiffs. The plaintiffs appeal from the judgment entered in favor of Cox's estate.

## D E C I S I O N

Appellants argue that they are entitled to a new trial on the issue of damages. Specifically, they argue that the jury's decision to not award damages is contrary to the evidence and is the result of passion or prejudice. In response, Cox's estate argues that (1) appellants cannot obtain a new trial from this court because they did not move for a new trial in the district court, (2) appellants cannot obtain appellate review because they have not provided this court with an adequate transcript of the trial, and (3) appellants' arguments are without merit because the jury's verdict is justified by the evidence.

Cox's estate is correct that appellants are not entitled to appellate relief for the three reasons stated. First, appellants cannot obtain appellate relief because they failed to move for a new trial in the district court. Appellants could have asked the district court to grant them a new trial on damages by bringing a motion pursuant to rule 59 of the Minnesota Rules of Civil Procedure. *See* Minn. R. Civ. P. 59.01(e), (g). They did not do so. As the supreme court explained in *Sauter v. Wasemiller*,

3

the motion for a new trial provides both trial court and counsel with a unique opportunity to eliminate the need for appellate review or to more fully develop critical aspects of the record in the event appellate review is sought. Counsel is required to focus the trial court's attention on the specifics of an objection which, though properly framed during trial, might not have been fully explained or the impact of which might not have been understood during trial. The trial court is given time for reflection and the opportunity to consider the context in which the alleged error occurred and the effect it might have had upon the outcome of the litigation. In short, it is given the opportunity to correct its own errors without subjecting the parties and the appellate courts to the time, expense and inconvenience involved in an appeal.

389 N.W.2d 200, 201-02 (Minn. 1986).

If appellants had moved for a new trial before taking this appeal, we would have reviewed the district court's ruling with great deference because a district court has broad discretion to grant or deny a motion for new trial such that "we will reverse that decision only for a clear abuse of that discretion." *Frazier v. Burlington N. Santa Fe Corp.*, 811 N.W.2d 618, 629 (Minn. 2012). Indeed, district courts have the "broadest possible discretion" when considering whether a new trial is necessary due to excessive or insufficient damages. *See Bisbee v. Ruppert*, 306 Minn. 39, 48, 235 N.W.2d 364, 371 (1975). Because appellants did not bring a motion for new trial, the district court never had an opportunity to consider whether, in its discretion, a new trial is warranted. If an appellant did not move for a new trial in the district court but seeks a new trial on appeal, an appellate court will not consider the appellant's new-trial argument for the first time on appeal. *Sauter*, 389 N.W.2d at 201-02; *Heise v. J.R. Clark Co.*, 245 Minn. 179, 191, 71 N.W.2d 818, 826 (1955) (citing cases); *cf. Alpha Real Estate Co. v. Delta Dental*

4

*Plan*, 664 N.W.2d 303, 311 (Minn. 2003); *Tyroll v. Private Label Chemicals, Inc.*, 505 N.W.2d 54, 56 (Minn. 1993). In the absence of a post-trial motion for new trial, an appellant may obtain only limited appellate review of the questions whether the evidence sustains the findings of fact and whether the findings sustain the conclusions of law and the judgment. *Gruenhagen v. Larson*, 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976). But we need not consider those questions in this case because appellants do not argue that they are entitled to judgment as a matter of law and do not seek that form of limited appellate review. *See Heise*, 245 Minn. at 191, 71 N.W.2d at 826; *Moen v. Sunstone Hotel Properties, Inc.*, 818 N.W.2d 573, 581-82 (Minn. App. 2012).

Second, even if we were to consider appellants' arguments for a new trial for the first time on appeal, appellants could not obtain appellate relief because they failed to provide this court with an adequate trial transcript. As a general rule, the appellant shall "order from the reporter a transcript of those parts of the proceedings not already part of the record which are deemed necessary for inclusion in the record." Minn. R. Civ. App. P. 110.02, subd. 1(a). If a transcript is necessary for the proper consideration of the issues presented on appeal but the appellant has not submitted the necessary parts, this court will not consider the merits of the appeal. *See State v. Anderson*, 351 N.W.2d 1, 2 (Minn. 1984); *Godbout v. Norton*, 262 N.W.2d 374, 376 (Minn. 1977); *Noltimier v. Noltimier*, 280 Minn. 28, 29, 157 N.W.2d 530, 531 (1968); *Collins v. Waconia Dodge, Inc.*, 793 N.W.2d 142, 146 (Minn. App. 2011), *review denied* (Minn. Mar. 15, 2011); *State v. Heithecker*, 395 N.W.2d 382, 383 (Minn. App. 1986); *Fritz v. Fritz*, 390 N.W.2d 924, 925 (Minn. App. 1986). This principle applies with full force when an appellant

seeks a new trial on the ground that the verdict is not justified by the evidence, *Custom Farm Servs., Inc. v. Collins*, 306 Minn. 571, 572, 238 N.W.2d 608, 609 (1976), and, more specifically, when the challenged issue is the amount of damages, *Bowman v. Pamida, Inc.*, 261 N.W.2d 594, 596 n.3 (Minn. 1977).

In this case, appellants ordered only a partial transcript. Appellants' partial transcript included the testimony of five trial witnesses and plaintiffs' closing argument. Cox's estate supplemented appellants' partial transcript by supplying transcriptions of the testimony of two additional trial witnesses and defendants' closing argument. Cox's estate contends that the partial transcript, even after supplementation, is insufficient because it lacks the testimony of "several additional witnesses," including Cox's mother. We are left to wonder because the record available to this court does not indicate how many witnesses testified at trial. The burden of producing an adequate appellate record falls on appellants. *See Custom Farm Servs.*, 306 Minn. at 572, 238 N.W.2d at 609. Appellants have not satisfied that burden.

Third, even if we were to consider appellants' arguments for a new trial for the first time on appeal, and even if the existing partial transcript were sufficient to allow appellate review, we would conclude that the jury's verdict is justified by the evidence and is not the result of passion or prejudice. In a wrongful-death case, a decedent's next of kin

> may be compensated not only for actual pecuniary loss of contributions and services but should be compensated as well for loss of advice, comfort, assistance, and protection which the jury might find to be of pecuniary value and which the

> survivor could reasonably have expected if the decedent had lived.

*Fussner v. Andert*, 261 Minn. 347, 359, 113 N.W.2d 355, 363 (1961). But a plaintiff in a wrongful-death case may not recover damages for his or her mental anguish. *Id.* at 350, 113 N.W.2d at 357. As the supreme court has recognized, "all verdicts attempting to compensate for the death of a minor child may be arbitrary attempts at a difficult, if not impossible, task," such that an appellate court should "extend[] deference to amounts awarded by trial courts." *Pehrson v. Kistner*, 301 Minn. 299, 303, 222 N.W.2d 334, 337 (1974).

Despite the limited appellate record, the jury's verdict with respect to damages appears to be justified by the absence or paucity of evidence of any compensable injury. The partial transcript does not contain any evidence that, after Belmonte gave birth to a child and became a mother, any plaintiff relied on her for financial contributions or services. *See Fussner*, 261 Minn. at 359, 113 N.W.2d at 363. Notably, Belmonte's infant daughter is not a party to this case. Furthermore, the partial transcript contains very little evidence that Belmonte provided appellants with "advice, comfort, assistance, and protection" during the period of time before her death. *See id.* For example, in the seven months between her daughter's birth and her own death, Belmonte received just one visit from any of the plaintiffs, and that visit was only 20 minutes in duration. Belmonte's mother, Teeple, was out of town for much of that seven-month period, during which time Belmonte resided with Cox's parents, who provided assistance to the young parents and helped them care for their baby. In short, the evidence does not provide a

7

strong basis for plaintiffs to prove that Belmonte's death deprived them of contributions, services, advice, comfort, assistance, or protection that they "could reasonably have expected if the decedent had lived." *See id.* at 359, 113 N.W.2d at 363. It appears that the jury made appropriate distinctions between those forms of injury, which are compensable in a wrongful-death case, and mental anguish, which is not compensable in a wrongful-death case. *See id.* at 350, 113 N.W.2d at 357. The jury had no easy task because the evidence shows that both families experienced great sorrow from losing two young family members. The record available to us does not lead to the conclusion that the jury's verdict is not justified by the evidence or is the result of passion or prejudice.

In the conclusion of their brief, appellants request that this court "make an additur of an appropriate amount to compensate the family for its loss of Tabitha's services." Appellants do not make an argument for additur in the argument section of their brief and do not provide any legal authority for such a remedy anywhere in their brief. Thus, we decline to consider the issue. *See* Minn. R. Civ. App. P. 128.02, subd. 1(d) (requiring citations to legal authority); *State Dept. of Labor & Indus. v. Wintz Parcel Drivers, Inc.*, 558 N.W.2d 480, 480 (Minn. 1997) (declining to reach issue "in the absence of adequate briefing").

**Affirmed.**